**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: NURTURE BABY FOOD
LITIGATION


This Document Relates to:

All Actions

Master File No.: 1:21-cv-01217-MKV

**MEMORANDUM IN SUPPORT OF THE
STEWART MOVANTS' MOTION FOR
APPOINTMENT OF INTERIM CO-
LEAD COUNSEL AND EXECUTIVE
COMMITTEE PURSUANT TO
FEDERAL RULE OF CIVIL
PROCEDURE 23(g)**

**<u>ORAL ARGUMENT REQUESTED</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 3

III.    PROCEDURAL BACKGROUND ...................................................................... 5

IV.     THE STEWART MOVANTS' COUNSEL ARE EMINENTLY
        QUALIFIED TO BE APPOINTED AS INTERIM CO-LEAD COUNSEL ..................... 5

        A.      FACTORS FOR APPOINTMENT OF INTERIM LEAD COUNSEL ................. 5

        B.      ALL FACTORS SUPPORT APPOINTMENT OF PROPOSED INTERIM
                CLASS COUNSEL .......................................................................... 7

                1.      Proposed Interim Class Counsel Have Done Extensive
                        Work Identifying and Investigating Potential Claims And
                        Have Moved the Case Forward ................................................. 7

                2.      Proposed Interim Class Counsel Have Substantial Experience
                        Leading Similar Complex Class Actions. .................................... 8

                        a.      Proposed Interim Co-Lead Counsel are Well Qualified to
                                Lead this Litigation. ............................................... 8

                        b.      The Executive Committee Allows for Efficient
                                and Effective Representation of the Class. ........................... 12

                        c.      Proposed Interim Class Counsel Have Diverse
                                Experience and Vast Knowledge of the Subject
                                Matter and Applicable Law. .......................................... 19

                        d.      The Stewart Movants Have Substantial Resources They Are
                                Committing to Representing the Class. ............................. 22

                        e.      The Stewart Movants Bring Important Diversity ..................... 22

V.      CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blessing v. Sirius XM Radio Inc.*,
  No. 09 CV 10035, 2011 WL 1194707 (S.D.N.Y. Mar. 29, 2011).............................................6

*Buonasera v. Honest Co., Inc.*,
  318 F.R.D. 17 (S.D.N.Y. 2016) ...........................................................................................5

*Campbell v. Synchrony Bank*,
  No. 1:17-CV-80, 2018 WL 8731545 (N.D.N.Y. Sept. 13, 2018)...........................................5

*Classick v. Schell & Kampeter, Inc. d/b/a Diamond Pet Foods*,
  No. 2:18-cv-02344, 2021 WL 2003118 (E.D. Cal. May 19, 2021). ......................................21

*Colangelo v. Champion Petfoods USA, Inc.*,
  No. 6:18-CV-1228, 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020)........................................21

*Egleston v. Verizon*,
  No. 194784/2011 (N.Y. Sup. Ct.) .......................................................................................13

*Hamelin v. Faxton-St. Luke's Healthcare*,
  274 F.R.D. 385 (N.D.N.Y. 2011) ..........................................................................................6

*In re: Actos End Payor Antitrust Litig.*,
  Master File No. 1:13-cv-09244, Slip Op. (S.D.N.Y. May 20, 2014)....................................19

*In re: Canon U.S.A. Data Breach Litig.*,
  Master File No. 1:20-cv-06239, Slip Op. (E.D.N.Y. Mar. 9, 2021) .....................................19

*In re: Crops Inputs Antitrust Litig.*,
  Case No. 4:21-md-2993, Slip Op. (E.D. Mo. August 27, 2021)...........................................19

*In Re Ford Fusion and C-Max Fuel Economy Litig.*,
  No. 13-MD-2450, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)..........................................19

*In re GSE Bonds Antitrust Litig.*,
  377 F. Supp. 3d 437 (S.D.N.Y. 2019).....................................................................................6

*In re: Int. Rate Swaps Antitrust Litig.*,
  No. 16-MC-2704, 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) ......................................6, 18

*In re J.P. Morgan Chase Cash Balance Litig.*,
  242 F.R.D. 265 (S.D.N.Y. 2007) ......................................................................................6, 22

*In re Mun. Derivatives Antitrust Litig.*,
  252 F.R.D. 184 (S.D.N.Y. 2008) ...........................................................................................8

*In re Robinhood Outage Litig.*,
No. 20-cv-01626, 2020 WL 7330596 (N.D. Cal. July 14, 2020) ............................6, 7, 22, 23

*In re Syngenta Litigation*
No. 27-cv-15-3785 (Henn. Co. Dist. Ct., Minn.)....................................................................11

*Kirby v. FIC Rests., Inc.*,
5:19-CV-1306, 2020 WL 3501398 (N.D.N.Y. June 29, 2020) ................................................6

*Moradi v. Adelson*,
No. 11-CV-00490, 2011 WL 5025155 (D. Nev. Oct. 20, 2011) .............................................6

*Tillman et al. v. Morgan Stanley Smith Barney, LLC*,
Case No. 1:20-cv-5914, Slip Op. (S.D.N.Y. Sept. 17, 2020) ................................................18

*Zeiger v. WellPet LLC*,
No. 3:17-cv-04056, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021).........................................20

RULES

Fed. R. Civ. P. 23 ................................................................................................... *passim*

STATUTES

Freedom of Information Act (FOIA) ...............................................................................7, 8

Class Action Fairness Act .................................................................................................20

OTHER AUTHORITIES

https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-
04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed
September 27, 2021) ............................................................................................................4

https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-
04/BabyFoodReport_ENGLISH_R6.pdf (last accessed September 27, 2021) .......................4

https://www.law.gwu.edu/humphreys-complex-litigation-center-publications (last
accessed September 27, 2021) ............................................................................................23

Manual for Complex Civil Litigation §§ 10.22 (4th ed. 2004).....................................................8

Plaintiffs Stewart, Fitzgerald, and Apicella (the "Stewart Plaintiffs"), together with Plaintiffs Smith, Hampton, McKeon, MacLeod, Skibicki, Gutierrez, Altuve, Daniels, Galeana, Gillens, Glenn, Hall, Jarrell, Kovacs, Lau, Lyles, Martinson, Mejia, Micciche, Milton, Michael Morrow, Musto, Okolo, and Tilahun (collectively, the "Stewart Movants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their Motion for Appointment of Interim Co-Lead counsel and Executive Committee in this consolidated class action (the "Consolidated Action") against Nurture, Inc. ("Defendant" or "Nurture") pursuant to Fed. R. Civ. P. 23(g).

## I.     INTRODUCTION

The Stewart Plaintiffs filed the first case against Nurture in this District and in the United States. They are now joined by five other groups of plaintiffs in this Consolidated Action. The Stewart Movants propose an efficient, cohesive, and diverse structure consisting of two interim lead counsel and a five-member executive committee. This leadership structure and counsel's collective experience and commitment will result in efficient litigation and skillful representation.

Pursuant to Rule 23(g)(3), the Stewart Movants respectfully seek the appointment of Lori G. Feldman and Rebecca A. Peterson as Interim Co-Lead Counsel, both of whom the Stewart Movants submit are eminently qualified to serve as lead this case. The Stewart Movants further request that the Court designate Michael Liskow, Katherine Van Dyck, Mark R. Rosen, Kara A. Elgersma, and Eddie Jae K. Kim as the Executive Committee. As explained below, the Interim Co-Lead Counsel and Proposed Executive Committee members (collectively, "Proposed Interim Class Counsel") satisfy the requirements of Rule 23(g)(3) because of the meaningful and coordinated steps they have already taken in this litigation to date to advance the putative class' interests. Indeed, Proposed Interim Class Counsel have successfully moved for the consolidation

of the numerous actions filed against Nurture in this District, presented the Court with updated proposed consolidation orders over the course of several months to keep the Court apprised of new litigation against Nurture and to update the proposed consolidation order, and sought and obtained case management deadlines (including for leadership motion briefing, filing a consolidated complaint, and Nurture's anticipated motion to dismiss). Counsel for the Stewart Movants have also coordinated their activities with Nurture's counsel and other plaintiffs' counsel and sought consensus. These steps, in addition to their work done in investigating and identifying the potential claims in this action, their vast class action experience (including heavy metal related litigation), demonstrated legal skill set, substantial resources, and strong commitment to diversity provide strong support for the instant motion.

Proposed Interim Class Counsel are a strong and highly experienced litigation team and will represent the best interests of the Class.[1] These attorneys and their respective law firms bring many decades of experience in and knowledge of consumer class actions, as well as extensive involvement in class actions specifically involving heavy metals in dog food products. Proposed Interim Class Counsel are also diverse in terms of gender, race, age, and geographic location and have significant trial experience. These law firms, and the other undersigned counsel supporting this Motion, have been the driving force in this case.[2] Proposed Interim Class Counsel have formed a cohesive team with the best candidates, showing both their dedication to and collective work in identifying and investigating the claims here and moving them forward.

---

[1] "Class" refers to all Classes or subclasses that are included in the Consolidated Action.

[2] Counsel supporting this motion have also advanced the litigation of similar cases in their respective courts. For example, they were the first to file in the E.D.N.Y. against Hain Celestial Group, Inc.; the first to file in the N.D.N.Y. against Beech-Nut Nutrition Company; and the first to file anywhere in the country against Plum PBC (N.D. Cal.), where Ms. Peterson was appointed Interim Co-Lead Counsel. All of these consumer class actions concern heavy metals in baby food.

As demonstrated herein and in the Joint Declaration of Lori G. Feldman and Rebecca A. Peterson in Support of this motion, ("Joint Decl.") at ¶6, Proposed Interim Class Counsel are skillful attorneys who are particularly dedicated to effectively and efficiently litigating this matter. Proposed Interim Co-Lead Counsel will oversee and supervise all activities to ensure there is no duplication of work and that resources are properly dedicated and used for the most efficient and effective litigation of this case. They intend to include any plaintiffs who want to remain class representatives in the Consolidated Action following a thorough vetting process. Then, as the litigation proceeds, Proposed Interim Co-Lead Counsel will make specific pre-trial work assignments, utilizing the skills of the Executive Committee members and their firms, as well as any other counsel needed to advance the interests of the Class. Given the likely complexity of the issues in this case, the structure proposed by the Stewart Movants strikes the proper balance of ensuring strong representation while avoiding duplication of effort. Monthly time and expense reporting, a strict timekeeping protocol, and detailed instructions for specific assignments will result in streamlined and focused litigation. For the reasons set forth herein, Counsel for the Stewart Movants are the best capable of representing the interests of all plaintiffs and the putative Class and should be appointed as Interim Class Counsel.

## II.      FACTUAL BACKGROUND

These consolidated actions all arise out of the inclusion of heavy metals and perchlorates in Nurture's baby foods, as exposed in a recent legislative report, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* ("the Congressional Report"), issued by the Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, U.S. House of Representatives on February 4, 2021, as well as the October 2019 *Healthy Babies*

Bright Futures, What's In My Baby's Food? Report ("Healthy Babies Report").[3] These reports set forth detailed findings demonstrating that at least arsenic, cadmium, lead, and mercury ("Heavy Metals") and perchlorate were present in "significant levels" in commercial baby food products, including Nurture's baby foods. (*See* Dkt. 2, ¶1 ("Stewart Complaint")). The Congressional Report revealed that Nurture's internal company standards permit dangerously high levels of toxic Heavy Metals. For example, despite the U.S. Food and Drug Administration's ("FDA's") limit of 100 ppb inorganic arsenic for infant rice cereal, Nurture set its own internal standard for cereals with more than 75% rice at 115 ppb inorganic arsenic, which is 15% higher than what the FDA allows. (*Id*. at ¶24.) Defendant's long-standing decision to advertise, package, and market its baby foods as healthy, nutritious, and safe for consumption contradicted its purposeful omissions concerning the lax internal quality control standards that allowed higher levels of heavy metals and the presence of perchlorate. Nurture misleads reasonable consumers into purchasing its baby foods by failing to disclose the inclusion of heavy metals and perchlorate—a material fact for any parent. And it had a duty to disclose these material omissions and ensure that its packaging was true and not misleading, which it failed to do. (*Id*. at ¶¶36-41.) Despite the conclusions in the Congressional Report and Healthy Babies Report regarding the presence of dangerous levels of heavy metals and perchlorate in Nurture's baby foods, Defendant still fails to disclose the inclusion of heavy metals on its packaging. The Congressional Report makes clear that this is deceptive.

---

[3] Available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed September 27, 2021) and https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed September 27, 2021).

## III.    PROCEDURAL BACKGROUND

On February 11, 2021, the Stewart Plaintiffs filed the first action against Nurture. (Dkt. 2.) On March 18, 2021, the Stewart Plaintiffs filed a Motion to Consolidate the cases filed against Nurture in this District. (Dkt. 13.) The Stewart Plaintiffs' counsel was regularly in touch with Defendant's counsel regarding the appropriate deadlines, scheduling conference dates, and related matters under Fed. R. Civ. P. 23(g) motions. On August 27, 2021, the Stewart Plaintiffs attended and directly participated in a telephonic conference with the Court and counsel of record for the purpose of addressing the Stewart Plaintiffs' pending motion to consolidate, proposed consolidation order, and the proposed leadership briefing and case management schedule.

## IV.    THE STEWART MOVANTS' COUNSEL ARE EMINENTLY QUALIFIED TO BE APPOINTED AS INTERIM CO-LEAD COUNSEL

### A.    FACTORS FOR APPOINTMENT OF INTERIM LEAD COUNSEL.

The Court may appoint interim class counsel "to act on behalf of a putative class before determining whether to certify the action as a class action." Rule 23(g)(3). "'[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities[.]'" *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016) (quoting Manual for Complex Litigation (Fourth) § 21.11 (2004)); *Campbell v. Synchrony Bank*, No. 1:17-CV-80 (MAD/DJS), 2018 WL 8731545, at *4 (N.D.N.Y. Sept. 13, 2018) (same).

Courts consider numerous factors in appointing interim lead counsel, including the same factors relevant in appointing lead counsel for a certified class. *Buonasera*, 318 F.R.D. at 18. These factors include:

(i)      the work counsel has done in identifying or investigating potential claims [];

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)   counsel's knowledge of the applicable law; and

(iv)   the resources that counsel will commit to representing the class.

*In re: Int. Rate Swaps Antitrust Litig.*, No. 16-MC-2704 (PAE), 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016); Rule 23(g)(1)(A). Any other matter pertinent to counsel's ability to fairly represent the class may also be considered. Rule 23(g)(1)(B). Finally, deference may be given to counsel who were the first to file and advance the case where, as is likely here, most of the other applicants are highly qualified to represent the class. *See*, *e.g.*, *In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) (appointing as lead counsel firms representing "the plaintiffs who filed the first of these consolidated actions"); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 403 (N.D.N.Y. 2011) (appointing firm that had investigated the claims and represented plaintiffs for years, handled a number relevant class actions, and vowed to litigate the case to conclusion and dedicate the resources necessary); *Kirby v. FIC Rests., Inc.*, 5:19-CV-1306 (FJS/ML), 2020 WL 3501398, at *4 (N.D.N.Y. June 29, 2020) (appointing firms with relevant experience that had done "substantial work in identifying, investigating, and prosecuting the claims"); *Moradi v. Adelson*, No. 11-CV-00490-GMN-RJJ, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) (noting that courts should consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker").

Diversity has also rightfully become an important consideration in the appointment of lead counsel. *See*, *e.g.*, *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y. 2007) ("Co-Lead counsel has met this Court's diversity requirement – *i.e.*, that at least one minority lawyer and one woman lawyer with requisite experience"); *Blessing v. Sirius XM Radio Inc.*, No. 09 CV 10035(HB), 2011 WL 1194707, at *12 (S.D.N.Y. Mar. 29, 2011) (interim class counsel "should ensure that the lawyers staffed on the case fairly reflect the class composition in terms of relevant race and gender metrics."); *In re Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020

6

WL 7330596, at *2 (N.D. Cal. July 14, 2020) (denying proposed leadership structure for lack of diversity in class counsel appointments). A diverse lead counsel group, particularly one that reflects the diversity of the proposed class, will enhance the Class' legal representation. *Id*. at *2.

**B.    ALL FACTORS SUPPORT APPOINTMENT OF PROPOSED INTERIM CLASS COUNSEL**

**1.    Proposed Interim Class Counsel Have Done Extensive Work Identifying and Investigating Potential Claims And Have Moved the Case Forward.**

The Stewart Movants have been at the forefront of this litigation and have shown initiative and leadership by advancing it in a coordinated manner. First, after filing the first case against Nurture, the Stewart Plaintiffs promptly took steps to organize the cases. On March 19, 2021, the Stewart Plaintiffs moved to consolidate the cases filed in this District against Nurture. Counsel for the Stewart Plaintiffs continued to push this case forward by submitting revised Proposed Orders and supplemental submissions as the additional related cases were filed against Nurture. (Dkts. 32-34, 40, and 46.) On August 27, 2021, Ms. Feldman addressed the Court at length regarding the merits of the Stewart Plaintiffs' pending motion to consolidate, the appropriate language for the Court's order on same, and the proposed leadership briefing schedule. Prior to August 27, 2021, the Stewart Plaintiffs negotiated and worked cooperatively with defense counsel and other plaintiffs' counsel regarding the proposed briefing schedule, and this Court ultimately ordered consolidation on August 30, 2021. (Dkt. 47.)

Proposed Interim Class Counsel have also begun contacting potential experts and have drafted discovery requests for service on Nurture. In addition, the Stewart Movants served a Freedom of Information Act (FOIA) request on the FDA on March 1, 2021, regarding the Congressional Report and all related documents and communications. *See* Joint Decl. at ¶7. Ms. Peterson has continued to communicate with the FDA on the status of its forthcoming response to

the FOIA request. *Id.* Moreover, in anticipation of a consolidated complaint, the Stewart Movants sent additional pre-suit notices to Nurture regarding Plaintiffs' warranty claims in various jurisdictions. When it is time to enter into a confidentiality order and an electronic discovery protocol and discovery plan, the Stewart Movants stand prepared and ready to promptly address these projects and advance the case quickly and efficiently.

> **2.      Proposed Interim Class Counsel Have Substantial Experience Leading Similar Complex Class Actions.**

> > **a.      Proposed Interim Co-Lead Counsel are Well Qualified to Lead this Litigation.**

When multiple counsel has expended significant time and resources investigating, organizing, and advancing the case and the Class would benefit from their collective resources, appointment of multiple counsel as co-lead counsel is appropriate. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186-87 (S.D.N.Y. 2008). The "greater collective resources" of Proposed Interim Class Counsel weigh in their favor here: Nurture is a "large [] institution[] with substantial financial and legal resources," and so the resources that Proposed Interim Class Counsel will collectively have at their disposal (which includes 7 firms with over 125 attorneys) will prove important in representing the Class. *Id*. at 186-87. Appointment of co-lead counsel will allow the orderly advancement of the litigation and result in substantial time savings for the parties and the Court. *See* Manual for Complex Civil Litigation §§ 10.22, 10.221 (4th ed. 2004).

Ms. Feldman, Ms. Peterson, and their firms have extensive experience in class actions, as well as other complex litigation. *See* Joint Decl. at Exs. A, B.

**<u>Lori G. Feldman</u>.** Ms. Feldman is the Chair of the Class Action Practice Group and Managing Partner of George Gesten McDonald, PLLC's ("GGM") New York office. She was admitted to the Southern District of New York in 1991 and is licensed in New York and

Washington State. *See* Joint Decl. at ¶11. Ms. Feldman was recently recognized by The National Law Journal as a 2021 Plaintiffs' Lawyers Trailblazer, as one of several plaintiffs' lawyers in the country who continue to make their mark in various aspects of work on the plaintiffs' side. *Id.* at ¶13. She has served in the leadership roles of lead counsel, co-lead counsel, and executive/steering committee member in numerous class action/MDL cases, including consumer protection and data breach cases, and has successfully litigated against some of the most well-funded and largest defendants in class actions, including but not limited to:

- *Cavalieri v. Gen. Elec. Co.*, 06-CV-315 (N.D.N.Y) ($40 million pension fraud class action settlement) (Sharpe, J);

- *South Ferry v. Killinger*, C04-1599-JCC (W.D. Wash.) ($41.5 million securities fraud settlement involving Washington Mutual);

- *In re Amazon.com Sec. Litig.*, C-01-358-L (W.D. Wash.) ($27.5 million securities fraud class action settlement);

- *In re CenturyLink Sales Practices and Sec. Litig.*, MDL No. 17-2795 (MJD/KMM) (D. Minn.) ($15.5 million consumer fraud settlement);

- *Podowitz v. Swisher Int'l, Inc*., 16-CV-27621 (Multnomah Cty, Or.) ($2.5 million consumer fraud class action settlement);

- *Hochstadt v. Boston Scientific Corp. ERISA Litig.*, C-08-CV-12139-DPW (D. Mass.) ($8.2 million pension fraud class action settlement);

- *Gebhardt v. ConAgra Foods, Inc.*, 4:01-CV-427 (D. Neb.) ($14 million securities fraud class action settlement);

- *In re Macy's Inc. ERISA Litig.*, 1:01-CV-02150-ML-KWR (S.D. Ohio) ($8.5 million pension fraud class action settlement);

- *In re Gilead Sciences Sec. Litig.*, C-03-4999-SI (N.D. Cal.) ($8.75 million securities fraud class action settlement);

- *In re Rhythms Sec. Litig.*, 02-CV-35-JLK-CBS (D. Colo.) ($17.5 million securities fraud class action settlement); and

- *In re Wawa, Inc. Data Sec. Litig.*, 19-cv-6019-GEK (E.D. Pa.) ($12 million consumer class action settlement (pending final approval)).

Joint Decl. at ¶11.

Ms. Feldman was recently appointed to serve as Plaintiffs' Co-Lead Counsel in *In re EyeMed Vision Care, LLC Data Sec., Litig.*, 1:20-cv-00036 (S.D. Ohio); on the Plaintiffs' Executive Committee in *In re Canon U.S.A. Data Breach Litig.*, 1:20-cv-06239 (E.D.N.Y.); and on the Plaintiffs' Executive Committee in *In re Morgan Stanley Data Sec. Litig.*, 1:20-cv-05914 (S.D.N.Y.). She works in a leadership capacity in the data breach case *In re Wawa, Inc. Data Breach Litig.*, No. 19-cv-6019-GEKP. (E.D. Pa.) and worked on the *In re Equifax Consumer Data Sec. Breach Litig.*, 1:17-md-2800 (N.D. Ga.). Joint Decl. at ¶12.

As an additional benefit to the Class, Ms. Feldman is a New York attorney (born and raised), and she earned her undergraduate degree at the State University of New York at Albany, and her Juris Doctor at Albany Law School of Union University, where she served on the Albany Law Review. She has litigated and settled complex class action litigation in the Southern District of New York and is admitted to practice in the Southern District of New York, eliminating the need for separate liaison counsel.

**Rebecca A. Peterson.** Ms. Peterson is a partner at Lockridge Grindal Nauen ("LGN") and licensed to practice in California and Minnesota. *See* Joint Decl. at ¶14. Ms. Peterson practices in the firm's class action group with a focus on consumer protection litigation. She has been part of

the successful prosecution of actions on behalf of consumers in both state and federal courts. Ms. Peterson has been part of various trial teams, including recently in *In re Syngenta Litigation* (Minn. Producers), No. 27-cv-15-3785 (Henn. Co. Dist. Ct., Minn.) and, alongside the trial team, was recognized as Attorney of the Year by Minnesota Lawyer for her work on behalf of U.S. farmers in that case. Ms. Peterson was recently appointed interim co-lead counsel in *In re Plum Baby Food Litigation*, No. 4:21-cv-00913-YGR (N.D. Cal.), a consumer protection case that involves similar claims of misleading and deceptive baby food packaging based on the nondisclosure of heavy metals.[4] Notably, Ms. Peterson has spent the last three years extensively litigating consumer mislabeling cases involving heavy metals and other toxins in pet food. Joint Decl. at ¶15. In these actions, she acts as lead counsel and has conducted and defended dozens of depositions, including expert depositions. She has vetted and worked extensively with experts that have the specific expertise required for opining on heavy metals in tainted pet food cases, issues that will be squarely relevant here. *Id*. Ms. Peterson has also argued class certification motions and dispositive motions, such as summary judgment, in those heavy metal cases and handled cross-examination in *Daubert* hearings. *Id*. As a result of her experience, Ms. Peterson has significant knowledge of the legal, discovery, expert, and factual issues that are critical in litigating consumer class cases concerning heavy metals and other contaminants. This includes intimate knowledge of the lack of regulatory guidance, quality control, manufacturing practices, and testing that will be at the forefront of this litigation. *Id*.

Ms. Peterson is supported by a robust, successful firm based in Minneapolis, Minnesota. *Id*. at ¶16. LGN's attorneys are experienced counsel in numerous areas, including consumer,

---

[4] This was the first case to decide contested motions for appointment of a leadership structure in the various heavy metal baby food cases.

antitrust, product liability, securities, environmental, employment, health care, commercial, intellectual property and telecommunications law. These attorneys have successfully led—and are presently leading—numerous multidistrict and complex class actions nationwide, including those involving consumer fraud claims. *Id*. Currently, Ms. Peterson is, in addition to serving as interim co-lead counsel in *In re Plum Baby Foods Litig.*, Case No. 4:21-cv-00913-YGR (N.D. Cal.), serving as interim co-lead counsel in *In re Big Heart Pet Brands Litig.*, Civil No. 4:18-cv-00861-JSW (N.D. Cal.) and *In re: Crops Inputs Antitrust Litig.*, Case 4:21-md-02993-SEP (E.D. Mo.).[5] Joint Decl. at ¶16, Ex. B.

> **b.** **The Executive Committee Allows for Efficient and Effective Representation of the Class.**

The Stewart Movants also respectfully request that the Court establish an Executive Committee and appoint Michael Liskow, Katherine Van Dyck, Mark R. Rosen, Kara A. Elgersma, and Eddie Jae K. Kim to that Committee. These attorneys possess substantial experience in consumer fraud and complex class actions and present an opportunity for the Court to award leadership positions to attorneys who are diverse in experience, gender, and race. Finally, they bring a diverse set of professional and personal experiences, including litigation experience related to heavy metals.

**Michael Liskow.** Mr. Liskow is a partner with Calcaterra Pollack LLP ("Calcaterra Pollack"). *See* Declaration of Michael Liskow in Support of this Motion ("Liskow Decl.") at ¶1, attached to the Joint Decl. as Ex. C. As detailed in his declaration, Mr. Liskow has spent almost his entire career litigating complex class actions on behalf of plaintiffs, with a focus on consumer class actions but also with significant experience in antitrust, data breach, and insurance class

---

[5] *See* Joint Decl. at Ex. B for additional representative cases.

actions, among others. *Id*. at ¶4; Liskow Decl. at Ex. 1. Mr. Liskow is a member of the New York and California bars, as well as numerous federal district and circuit courts, including the Southern District of New York. *Id*. at ¶1.

Mr. Liskow has initiated and litigated numerous class actions to completion as the lead attorney through investigation, complaint, discovery, motion practice, appeal, and resolution, including *Thompson v. Bethpage Fed. Credit Union*, No. 2:17-cv-00921 (E.D.N.Y.), alleging violations of the Real Estate Settlement Procedures Act resulting in a settlement where every class member received a full recovery, and *Egleston v. Verizon*, No. 194784/2011 (N.Y. Sup. Ct.), on behalf of overbilled Verizon customers resulting in a $5 million settlement providing full refunds plus interest and fees to the class. *Id*. at ¶5. He is currently acting as lead counsel in *Am. Jetter & Plumbing, Inc. v. State Comp. Ins. Fund*, No. 19STCV36307 (Sup. Ct. Cal.), a class action on behalf of businesses charged improper workers' compensation insurance rates; as co-lead counsel in *Sotelo v. Rawlings*, 2:18-cv-09166-GW-MAA (C.D. Cal.), a consumer class action against a baseball bat manufacturer for false advertising and misrepresentations; and as co-lead counsel in *Tepper v. Santander*, No. 7:20-cv-00501-KMK (S.D.N.Y.), a consumer class action against a mortgage lender for failure to pay interest on escrow accounts required by law. *Id*. at ¶6. Mr. Liskow also currently represents a plaintiff in *In re Apple iPhone Antitrust Litig.*, 4:11-cv-06714-YGR (N.D. Cal.), stemming from Apple's monopolization of the iPhone application market. *Id*.

Mr. Liskow is supported by his firm, Calcaterra Pollack LLP, a 100% women-owned six-attorney law firm in New York, New York. *Id*. at ¶7. Calcaterra Pollack's attorneys have litigated dozens of federal and state complex litigation matters, including class actions, securing several hundred million dollars in recoveries for clients in a variety of fields including consumer protection, antitrust, securities, social justice, and commercial litigation. *Id*. Calcaterra Pollack is

a WBENC-Certified Women's Business Enterprise and has applied for certification as a New York State Women's Business Enterprise. Diversity and inclusivity are not mere buzzwords at Calcaterra Pollack, where seven of the eight employees of the firm are women and/or professionals of color and/or openly LGBTQI+.

**Katherine Van Dyck.** Ms. Van Dyck is an attorney with Cuneo Gilbert & LaDuca, LLP ("Cuneo"). *See* Declaration of Katherine Van Dyck in Support of this Motion ("Van Dyck Decl.") at ¶1, attached to the Joint Decl. as Ex. D. Ms. Van Dyck began her career as a law clerk to the Honorable Hayden W. Head, Jr. in the United States District Court for the Southern District of Texas. *Id*. at ¶6. She has 15 years of litigation experience, including appearances in individual and class action trials; significant briefing of complex procedural and substantive issues before federal and state courts at both the trial and appellate level; and the management and taking of discovery against multi-billion dollar defendants. *Id*. At Cuneo, she represents consumers, small businesses, and employees in false advertising, product liability, wage & hour, and antitrust class actions. Her representative actions include: *Hootselle, et al. v. Missouri Dep't of Corr.*, No. 12AC-CC00518 (Mo. Cir. Ct.—Cole Cty.) (obtained, with co-lead counsel, a $113.7 million dollar verdict at a damages trial and partial summary judgment, the majority of which was affirmed by the Supreme Court of Missouri, in favor of 13,000 correctional officers owed backpay for thousands of hours of uncompensated work); *Zeiger v. WellPet LLC*, No. 3:17-cv-04056-WHO (N.D. Cal.) (achieved, with Proposed Interim Class Counsel Rebecca A. Peterson, certification of a Rule 23(b)(2) injunctive class of consumers alleging false labeling of premium dog food contaminated with heavy metals, after defeating dispositive motions by the defendant); *Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al.*, No. 2:20-cv-2600-SHL (W.D. Tenn.) (currently serving as Interim Co-Lead Counsel representing All Star cheerleading gyms in ongoing litigation alleging

monopolization of the All Star cheerleading competition and apparel industries. Defendants' motions to dismiss the matter were denied in full on August 26, 2021); *Los Gatos Mercantile, Inc., et al., v. E.I. Dupont De Nemours and Co., et al.*, No. 3:13-cv-01180-WHO (N.D. Cal.) (obtained a $3.5 million settlement on behalf of architectural paint purchasers in antitrust price-fixing litigation after defeating multiple rounds of Rule 12(b)(6) motions); and *Mayhew, et al. v. KAS Direct, LLC and S.C. Johnson & Son, Inc.*, No. 16-cv-6981 (S.D.N.Y.) (secured a $2.2 million settlement combined with injunctive relief on behalf of consumers nationwide who alleged false labeling of children's bath and body products). *Id*.

**Mark R. Rosen.** Mr. Rosen is a partner with Barrack, Rodos & Bacine ("BRB"). *See* Declaration of Mark R. Rosen in Support of this Motion ("Rosen Decl.") at ¶1, attached to the Joint Decl. as Ex. E. Mr. Rosen is a 1979 *cum laude* graduate of Harvard Law School and a partner in the firm. *Id*. at ¶3. He has devoted a substantial part of his career to prosecuting claims for consumers and other victims of fraud. He led the fight to establish the landmark ruling in *Strawn v. Canuso*, 140 N.J. 43, 657 A.2d 420 (1995), vindicating the rights of consumers who were defrauded in being sold homes next to a toxic landfill. *Id*. He served as co-lead counsel for plaintiffs in *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, in the Eastern District of Pennsylvania, which produced over $105 million in settlements, and is a member of the plaintiffs' executive committee in *In re Evenflo Co., Inc. Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 20-md-02938-DJC, Case No. 1:20-cv-11171-DJC, pending in the District of Massachusetts. *Id*. at ¶4. From 2005 through 2015, BRB attorneys have successfully prosecuted numerous cases against Allianz, Midland, Conseco, Fidelity & Guaranty, National Western and other insurance providers challenging the treatment of seniors purchasing annuities, securing over $1 billion in recoveries. *Id*. at ¶5.

Mr. Rosen, or his partners, have also served as a lead or co-lead counsel in securing billions of damages for consumers who were defrauded in their stock purchases, including, by way of example, *In re WorldCom, Inc. Sec. Litig.* (over $6 billion), *In re Cendant Corp. Litig.* (over $3.3 billion), *In re McKesson HBOC, Inc. Sec. Litig.* (over $1 billion), *In re Am. Int'l Group, Inc. 2008 Sec. Litig.* (over $970 million), *Pennsylvania Public School Employees' Ret. Sys. v. Bank of Am. Corp.* ($335 million), and *In re Apollo Grp., Inc. Sec. Litig.* ($145 million following successful trial and appeal). *Id.* at ¶6. He also brings his experience handling a number of successful appeals, including *Strawn, Iowa Public Employees' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 937 (2d Cir. 2010) ($90 million recovery after successful appeal), *Employees Ret. Sys. of Gov't of Virgin Islands v. Blanford*, 794 F.3d 297 (2d Cir. 2015) (over $36 million recovery after successful appeal), and *Rieff v. Evans* (*Allied Mut. Ins. Co. Demutualization Litig.*), No. CE 35780 (Iowa Polk County), concerning the demutualization of Allied Mutual Insurance Company, which settled favorably after his oral argument before the Iowa Supreme Court. *Id.* at ¶7.

**Kara A. Elgersma.** Ms. Elgersma is a partner with Wexler Wallace, LLP ("WW"). *See* Declaration of Kara A. Elgersma in Support of this Motion ("Elgersma Decl.") at ¶1, attached to the Joint Decl. as Ex. F. Ms. Elgersma has substantial class action experience across a wide array of cases in various industries and has represented clients in class actions with antitrust, ERISA, securities, employment classification, breach of fiduciary duty, environmental, and consumer goods and services claims. Ms. Elgersma is currently one of five Plaintiffs' Steering Committee members in a class action asserting negligence, private nuisance, and public nuisance claims based on alleged contamination of groundwater with polyfluoroalkyl substances ("PFAS") pending in the United States District Court for the Western District of Michigan. *Id.* at ¶3. Ms. Elgersma is also class counsel for a certified class of over three thousand current and former Farmers insurance

agents alleging worker misclassification in violation of California law. *Id*. She was also class counsel for a certified class of American Family insurance agents in a case asserting that the class members' rights under ERISA had been violated. *Id*. Ms. Elgersma is currently representing the City of Chicago in its case against opioid manufacturers, alleging that they misrepresented the nature and uses of prescription opioid medications, which caused over-prescribing and abuse of opioids in the City. *Id*. The City's case is but one of thousands dealing with the nationwide opioid crisis pending across the country, which has required significant coordination and management efforts by counsel. *Id*. These examples of Ms. Elgersma's experience and success in complex commercial litigation, including class action litigation, evidence an understanding and ability to devote the time and resources needed to assure the best recovery for class members.

**Eddie Jae K. Kim.** Mr. Kim is a partner with Carlson Lynch LLP ("Carlson Lynch"). *See* Declaration of Eddie Jae K. Kim in Support of this Motion ("Kim Decl.") at ¶1, attached to the Joint Decl. as Ex. G. Since graduating from Cornell Law School in 2004, Mr. Kim has devoted his career to litigating class actions on the plaintiffs' side and has obtained billions of dollars in recoveries in many types of class action matters, including product liability cases. *Id*. at ¶3. Prior to joining Carlson Lynch LLP, he was a partner at the Southern California law firm McCune Wright Arevalo, LLP, where he played a substantial role in building a nationally recognized consumer class action practice. *Id*. His work includes a number of significant and high-profile cases, including *Gutierrez v. Wells Fargo*, which resulted in the $203 million trial verdict on behalf of one million California bank customers, which spawned a national multi-district litigation against many of the largest banks in the country that resulted in several billion dollars' worth of settlements. *Id*. at ¶4. Mr. Kim's class action experience also includes product liability matters, including developing the first-filed case, *Espinosa v. Hyundai*, which challenged the auto

manufacturer's advertisement of inflated fuel efficiency numbers and became the basis for the multidistrict litigation *In re Hyundai and Kia Fuel Economy Litig.* and the resultant $200 million settlement. *Id*. at ¶5. He also has product liability trial experience, having served as co-trial counsel in a class action against the boat manufacturer Correct Craft, which resulted in a verdict for the class that included reimbursement of the purchase price and an injunction requiring the recall of dangerous boat showers that put people at risk of fatal carbon monoxide poisoning. *Id*. His firm, Carlson Lynch LLP, specializes in class action litigation in all types of cases, including some of the country's largest consumer, securities and antitrust class action matters. *Id*. at ¶6.

The appointment of this Executive Committee to "support the efforts" of Proposed Interim Co-Lead Counsel is both efficient and will protect the Class' interests. *See In re: Int. Rate Swaps Antitrust Litig.*, WL 4131846, at *4. This complex case will likely entail the evaluation of tens of thousands of documents concerning the manufacturing of the numerous products at issue, including: (1) supplier information; (2) formulation documents; (3) audits of Nurture and its suppliers; (4) quality control manuals and documents; (5) internal and third-party testing of both ingredients and finished products; (6) consumer inquires and complaints; and (7) documents related to governmental investigation. There will be various experts, including for testing, liability, and damages. There will also likely be class representatives from across the country and a significant number of party and likely third-party depositions, including Happy Baby Bright Futures. Proposed Interim Co-Lead Counsel will oversee and direct all litigation activities and avoid any duplication of effort.

Accordingly, an Executive Committee is warranted, appropriate, and will add significant value here. *See, e.g.*, *Tillman et al. v. Morgan Stanley Smith Barney, LLC*, Case No. 1:20-cv-5914, Slip Op. at 3 (S.D.N.Y. Sept. 17, 2020) (appointing interim co-lead counsel along with an

executive committee of six attorneys) (Joint Decl. at Ex. H); *In re: Crops Inputs Antitrust Litig.*,

Case No. 4:21-md-2993 SEP, Slip Op. at 2-3 (E.D. Mo. August 27, 2021) (designating interim co-

lead class counsel along with an executive committee of twenty attorneys) (Joint Decl. at Ex. I);

*In Re Ford Fusion and C-Max Fuel Economy Litig.*, No. 13-MD-2450 (KMK), 2015 WL 7018369,

at *10 (S.D.N.Y. Nov. 12, 2015) (designating Lead Counsel, Liaison Counsel, and members of

Plaintiffs' Executive Committee) (Joint Decl. at Ex. J); *see also In re: Canon U.S.A. Data Breach

Litig.*, Master File No. 1:20-cv-06239-AMD-SJB, Slip Op. at 3 (E.D.N.Y. Mar. 9, 2021) (Joint

Decl. at Ex. K); *In re: Actos End Payor Antitrust Litig.*, Master File No. 1:13-cv-09244-BA, Slip

Op. at 5-6 (S.D.N.Y. May, 20, 2014) (designating Lead Counsel, Liaison Counsel, and members

of Plaintiffs' Executive Committee) (Joint Decl. at Ex. L).

      **c.**    **Proposed Interim Class Counsel Have Diverse Experience and
Vast Knowledge of the Subject Matter and Applicable Law.**

The Stewart Movants include twenty-seven (27) plaintiffs[6] who reside in twenty (20) states

---

[6] The Stewart Movants purchased a wide array of the products at issue, including various lines of Nurture HappyBaby, HappyBaby Organic, Nurture's HappyTot and HappyFamily products, including Happy Tot Apple and Spinach Toddler Bars; HappyBABY Apple Oats and Cinnamon Jar; HappyBaby Apple Rice Cakes; HappyBABY Apple Spinach Pea & Kiwi Creamies; HappyBABY Apples & Spinach Jar; HappyBABY Apples Guavas & Beets Pouch; HappyBABY Apples Pumpkins & Carrots [Puree] Pouch; HappyBABY Apples Sweet Potatoes & Granola Pouch; HappyBABY Banana and Sweet Potato Jar; HappyBABY Banana Plum and Granola Pouch; HappyBaby Banana Pumpkin Puffs; HappyBABY Banana Raspberry and Oats Pouch; HappyBABY Bananas & Strawberries Jar; HappyBABY Blueberry & Purple Carrot Greek Yogis; HappyBABY Blueberry & Purple Carrot Teethers; HappyBABY Broccoli Pear Peas Pouch; HappyBABY Carrots Jar; HappyBABY Green Beans Pear Spinach Pouch; HappyBABY Kale & Spinach Puffs [Organic Grain Snack]; HappyBABY Mango & Pumpkin Teether Crackers; HappyBaby Mixed Berry Yogis; HappyBABY Oats & Quinoa Cereal; HappyBABY Pea & Spinach Teethers; HappyBABY Pear Kale and Spinach Pouch; HappyBABY Pears & Kale Jar; HappyBABY Pears Kale & Spinach Pouch; HappyBABY Pears Mangos & Spinach Jar; HappyBABY Purple Carrot & Blueberry Puffs [Organic Grain Snack]; HappyBABY Strawberry & Beet Puffs [Organic Grain Snack]; HappyBABY Strawberry & Beet Teethers; HappyBABY Strawberry Raspberry and Carrot Creamies; HappyBABY Strawberry Yogis; HappyBABY Sweet Potato & Banana Teethers; HappyBABY Sweet Potato & Carrot Puffs [Organic Grain Snack]; HappyBABY Sweet Potatoes Jar; HappyBABY Vegetable & Beef Medley with Quinoa Pouch.

(New York, Florida, Minnesota, Illinois, New Jersey, California, North Dakota, North Carolina, Colorado, New Hampshire, Kentucky, Tennessee, Ohio, Nevada, Maryland, Georgia, Michigan, Missouri, Virginia, and Washington D.C.), **three** of which are among the ten most populous in the United States.[7] Proposed Interim Class Counsel are licensed or admitted to practice in courts within: New York, California, Washington, Minnesota, New Jersey, Pennsylvania, Texas, and the District of Columbia, with Ms. Feldman and Mr. Liskow admitted in this District. Moreover, Proposed Interim Class Counsel and their firms practice nationwide, litigating cases involving the states' laws at issue here, and they are well versed in federal court procedures and the intricacies of diversity jurisdiction, Rule 23, and the Class Action Fairness Act. This is especially true of consumer protection statutes and related common law.

The Court will receive multiple applications from highly qualified attorneys. While knowledge of class action litigation is a must, the Proposed Interim Class Counsel collectively bring more on-point experience because they have litigated class actions involving heavy metals in consumer products. As discussed *supra*, three of the Proposed Interim Class Counsel firms have been litigating consumer class actions involving the presence of heavy metals in dog foods for the past three years. In one such case, Judge Orrick certified a Rule 23(b)(2) class of consumers who purchased dog food alleged to include undisclosed heavy metals. *See Zeiger v. WellPet LLC*, No. 3:17-cv-04056-WHO, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) (Rule 23(f) petition subsequently denied). This same order also denied summary judgment as to the plaintiff's consumer protection claims related to the presence of heavy metals and largely denied the defendant's *Daubert* motion to exclude the plaintiff's liability expert's opinion on the potential

---

[7]   https://www.census.gov/newsroom/press-releases/2019/popest-nation.html   (September   27, 2021).

risks of heavy metal ingestion and the ability to control levels in dog food. *Id*. Ms. Peterson also has a case pending in the Northern District of New York concerning false advertising of dog food based on the inclusion of heavy metals and other contaminants and toxins. This case survived a motion to dismiss (*Colangelo v. Champion Petfoods USA, Inc.*, No. 6:18-CV-1228 (LEK/ML), 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020)), and the parties have briefed class certification, summary judgment, and *Daubert* motions. And most recently, three of the Proposed Interim Class Counsel defeated a motion to dismiss in *Classick v. Schell & Kampeter, Inc. d/b/a Diamond Pet Foods* in its entirety, with the district court noting that "[i]t is reasonable to believe that consumers would decline to purchase the dog food if they knew it contained any level of contaminants and that those contaminants may be harmful to dogs." No. 2:18-cv-02344-JAM-AC, 2021 WL 2003118, at *4 (E.D. Cal. May 19, 2021).

These cases, many of which have progressed through fact and expert discovery, have provided Ms. Peterson, Ms. Van Dyck, and Ms. Elgersma with specific knowledge and expertise for cases involving Heavy Metals, including the anticipated defenses of naturally occurring heavy metals and quasi-regulatory arguments. Ms. Peterson in particular has taken and defended the liability and testing experts' depositions in these cases and has led class certification and dispositive motion practice, giving her an intimate understanding of the FDA, EPA, EU, and other governmental bodies' rules, regulations, guidance, and lack thereof, as well as familiarity with the theories that will likely drive the liability expert opinions, class certification, and dispositive motions here, such as bioaccumulation and the ability to control the inclusion of Heavy Metals in a finished product. Moreover, each of these pet food cases are consumer cases seeking economic damages and alleging that the nondisclosure of the heavy metals to consumers made the packaging misleading—the same theory the Stewart Movants advance here. Thus, Proposed Interim Class

Counsel's knowledge regarding Heavy Metals will be invaluable to the Class.

  **d.**  **The Stewart Movants Have Substantial Resources They Are Committing to Representing the Class.**

  The Proposed Interim Class Counsel have substantial resources that they have committed and will continue to commit to representing the Class. GGM has seven attorneys and four staff in three offices located in New York, NY, Lake Worth, FL, and Richmond, VA; LGN has 55 attorneys and 18 staff in three offices in Minneapolis, MN, Washington, D.C., and Bismarck, ND; Calcaterra Pollack has 6 attorneys in New York, New York; Cuneo has 22 attorneys in Washington, D.C., Brooklyn, NY, St. Louis, MO, and Tampa, FL; BRB has 11 attorneys with offices in New York, NY, Philadelphia, PA, and San Diego, CA; WW has 13 attorneys in Chicago, IL; and Carlson Lynch has 23 attorneys in Chicago, IL, Los Angeles, CA, Philadelphia, PA, Pittsburgh, PA and San Diego, CA (4 of whom are recent graduates). All are prominent national class action firms that have the funds and resources to litigate this case effectively and efficiently. And each member of the Proposed Interim Class Counsel is personally committed to prosecuting this case. Joint Decl. at ¶¶18-19; Liskow Decl. at ¶¶9-11; Van Dyke Decl. at ¶¶8-10; Rosen Decl. at ¶¶19-21; Elgersma Decl. at ¶¶5-7; and Kim Decl. at ¶¶7-9.

  **e.**  **The Stewart Movants Bring Important Diversity**

  Diversity has become an important issue not only in the legal profession as a whole but in class action leadership. *See*, *e.g.*, *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. at 277; *Robinhood*, No. 20-cv-01626-JD, WL 7330596, at *2. The recent guidelines entitled "Diversity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class-Action Litigation," issued by the James F. Humphreys Complex Litigation Center, George Washington Law School (March 15, 2021) ("Guidelines and Best

Practices"),[8] "address the judiciary's responsibility for, and role in, giving lawyers across the profession an equal opportunity to be appointed to MDL and class-action leadership positions," (Guidelines and Best Practices at 1), particularly women, minorities, disabled attorneys, and LGBTQ lawyers. *Id*. at iii.

With respect to Rule 23(g), the Guidelines and Best Practices state that "appointing diverse counsel to leadership roles can be important to fulfilling" the court's obligation to select counsel who will fairly and adequately represent the class. *Id*. at 6. The Guidelines and Best Practices also note that appointing non-repeat yet able attorneys to leadership positions "provides the opportunity to train future leaders, permitting the system to work well in the years to come." *Id*. at 11.

The Stewart Movants' proposed leadership structure is fully consistent with the foregoing as well as recent cases supporting diversity in such appointments. First, women account for 93% of consumer purchasers of food and 80% of women say they are the primary grocery shoppers for their households.[9] As such, a leadership structure composed of two female attorneys as Co-Leads along with two female attorneys and three male attorneys as Executive Committee members reflects the likely constitution of the proposed Class members. In addition, the Proposed Interim Class Counsel have a vast range of age and years practicing law, including amply experienced but younger attorneys who have few leadership appointments. This structure will ensure that younger qualified attorneys will be given an opportunity to hold important leadership positions and have significant roles in the litigation.

All the Proposed Interim Class Counsel firms fully support diversity and intend on staffing

---

[8]   https://www.law.gwu.edu/humphreys-complex-litigation-center-publications (last accessed September 27, 2021).
[9] https://girlpowermarketing.com/statistics-purchasing-power-women/ (last accessed September 27, 2021). *See also* https://m2w.biz/fast-facts/ ("Women Account for 85% of overall consumer spending…" and 93% Food") (last accessed September 27, 2021).

this case accordingly. For example, Ms. Feldman leads her firm's Class Action Practice Group and will be supported by other women lawyers on this case. More than 40% of GGM's attorneys are women and, as reflected in its website, www.4-Justice.com, it embraces and encourages diversity among its lawyers and staff and respects the differences among its employees and its communities.

Ms. Peterson's firm, LGN, is also committed to developing and fostering a diverse and inclusive practice to reflect the diversity of its clients and the greater community.[10] LGN recognizes that its firm is stronger when it includes all individuals regardless of gender, race, ethnicity, national origin, sexual orientation, gender identity or expression, or physical ability. *Id.* In fact, "[w]omen make up half of LGN's attorneys and almost 40% of [LGN's] partners – a figure well ahead of the national average." *Id*. LGN is also an active member of Twin Cities Diversity in Practice, a local association committed to creating an inclusive legal community.

Appointment of Ms. Feldman and Ms. Peterson along with Mr. Liskow, Ms. Van Dyck, Mr. Rosen, Ms. Elgersma, and Mr. Kim as members of the leadership team would ensure diversity in age, gender, and race.

## V.      CONCLUSION

The Stewart Movants respectfully submit their motion be granted in its entirety.

Dated: September 28, 2021                  Respectfully submitted,

                                           By: /s/ Lori G. Feldman
                                           Lori G. Feldman, Esq. (admitted in SDNY)
                                           GEORGE GESTEN MCDONALD, PLLC
                                           102 Half Moon Bay Drive
                                           Croton-on-Hudson, NY 10520
                                           Telephone: (561) 232-6002
                                           Facsimile:  (888) 421-4173
                                           E-Mail: lfeldman@4-justice.com
                                           E-Service: eService@4-justice.com

---

[10] *See* https://www.locklaw.com/diversity-and-inclusion/ (last accessed September 27, 2021).

David J. George (admitted *pro hac vice*)
Brittany Brown (admitted *pro hac vice*)
GEORGE GESTEN MCDONALD, PLLC
9897 Lake Worth Road, Suite 302
Lake Worth, FL 33463
Telephone: (561) 232-6002
Facsimile:  (888) 421-4173
E-mail: dgeorge@4-Justice.com
          bbrown@4-Justice.com
E-Service: eService@4-justice.com

By: /s/ Rebecca A. Peterson
Rebecca A. Peterson (admitted *pro hac vice*)
Robert K. Shelquist (admitted *pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
E-Mail: rapeterson@locklaw.com
          rkshelquist@locklaw.com
          kkfreier@locklaw.com

**Plaintiffs' Proposed Co-Lead Interim Counsel**

Janine L. Pollack (admitted in SDNY)
Michael Liskow (admitted in SDNY)
CALCATERRA POLLACK LLP
1140 Avenue of the Americas, 9th Floor
New York, NY  10036
Telephone: (917) 899-1765
Facsimile:  (332) 206-2073
E-Mail: jpollack@calcaterrapollack.com
          mliskow@calcaterrapollack.com

Katherine Van Dyck (admitted *pro hac vice*)
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave, NW, Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
E-mail: kvandyck@cuneolaw.com

Kara A. Elgersma (admitted *pro hac vice*)
WEXLER WALLACE, LLP
55 West Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
E-Mail: kaw@wexlerwallace.com

Mark R. Rosen (admitted *pro hac vice*)
BARRACK RODOS & BACINE
Eleven Times Square
640 8th Avenue, 10th Floor
New York, NY 10036
Telephone: (212) 688–0782
Facsimile: (212) 688–0783
E-Mail: mrosen@barrack.com

Eddie Jae K. Kim (to be admitted)
CARLSON LYNCH LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 322-9243
E-Mail: ekim@carlsonlynch.com

**Plaintiffs' Proposed Executive Committee**

Catherine Sung-Yun K. Smith (to be admitted)
Daniel E. Gustafson (admitted *pro hac vice*)
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-Mail: csmith@gustafsongluek.com
        dgustafson@gustafsongluek.com

Susana Cruz Hodge (admitted *pro hac vice*)
Joseph DePalma (admitted *pro hac vice*)
LITE DEPALMA GREENBERG & AFANADOR
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
E-Mail: scruzhodge@litedepalma.com
           jdepalma@litedepalma.com

Thomas A. Zimmerman, Jr. (admitted *pro hac vice*)
Sharon A. Harris (to be admitted)
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, IL 60602
Telephone:  (312) 440-0020 telephone
Facsimile:  (312) 440-4180
E-Mail: tom@attorneyzim.com
           sharon@attorneyzim.com

**Attorneys for the Stewart Movants**

**Plaintiffs' Counsel Supporting This Motion:**

Kevin Landau (to be admitted)
Miles Greaves (to be admitted)
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone:  (212) 931-0704
E-Mail:  klandau@tcllaw.com
           mgreaves@tcllaw.com

Patrick Howard (to be admitted)
SALTZ, MONGELUZZI, &
BENDESKY, P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone:  (215) 575-3895
E-Mail:  phoward@smbb.com

Matthew D. Schelkopf (to be admitted)
Lori G. Kier (to be admitted)
Davina C. Okonkwo (to be admitted)
SAUDER SCHELKOPF
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
E-Mail:  mds@sstriallawyers.com
             lgk@sstriallawyers.com
             dco@sstriallawyers.com

**Attorneys for Plaintiffs Lillian Hampton, Kelly McKeon and Jen MacLeod**

Todd D. Carpenter (to be admitted)
Scott G. Braden (to be admitted)
CARLSON LYNCH LLP
1350 Columbia St., Ste. 603
San Diego, CA 92101
Telephone:  (619) 762-1900
Facsimile:  (619) 756-6991
E-Mail:   tcarpenter@carlsonlynch.com
              sbraden@carlsonlynch.com

Jeffrey K. Brown (to be admitted)
Michael A. Tompkins (to be admitted)
Brett R. Cohen (to be admitted)
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
E-Mail:  jbrownl@leedsbrownlaw.com
              mtompkins@leedsbrownlaw.com
              bcohen@leedsbrownlaw.com

**Attorneys for Plaintiff Tiffanie Skibicki**

William J. Ban (to be admitted)
BARRACK, RODOS & BACINE
Eleven Times Square
640 8th Ave, 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Facsimile:  (212) 688-0783
E-Mail:   wban@barrack.com

28

Stephen R. Basser (to be admitted)
BARRACK, RODOS & BACINE
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
E-Mail:  sbasser@barrack.com

**Attorneys for Plaintiff Angela Gutierrez**