UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re NURTURE BABY FOOD LITIGATION**<br><br>This document relates to:<br><br>ALL ACTIONS | Case No. 1:21-cv-01217-MKV |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND <u>CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS</u>**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3
      A.    Statement of the Case ........................................................................ 3

      B.    Defendant's Position ......................................................................... 4

      C.    Mediation and Settlement ................................................................. 5

      D.    Settlement Agreement Terms ........................................................... 5
            1.    The Class Definition .............................................................. 5
            2.    The Cash Settlement Fund ...................................................... 5
            3.    Voucher Settlement Program .................................................. 6
            4.    Cash Settlement Awards and Voucher Settlement Awards .................. 7
            5.    Release of Claims ................................................................... 7
            6.    Notice, Claims Process, and Settlement Administration ...................... 7
            7.    Attorneys' Fees and Costs and Service Awards ................................ 7

II.   ARGUMENT ..................................................................................................... 8
      A.    The Standard and Procedures for Granting Preliminary Approval ................. 8
      B.    Rule 23(e)(2) Factors Are Met ........................................................ 10
            1.    Class Counsel and Plaintiffs Adequately Represented the Class (Rule 23(e)(2)(A)) ........................................................... 10
            2.    The Settlement Was Negotiated at Arm's Length by Informed Counsel (Rule 23(e)(2)(B)) .................................................... 11
            3.    The Settlement Provides Adequate Relief to the Class (Rule 23(e)(2)(C)(i)) .................................................................... 12
            4.    The Settlement Treats All Class Members Equitably ........................ 13
      C.    The *Grinnell* Factors ..................................................................... 14
            1.    The Complexity, Expense and Likely Duration of the Litigation ...... 14
            2.    The Reaction of the Class to the Settlement .................................. 16
            3.    The Stage of the Proceedings and the Amount of Discovery Completed ............................................................................ 16
            4.    The Risks of Establishing Liability and Damages, and Maintaining the

Class Action Through Trial ................................................................. 16

5.    The Ability of the Defendant to Withstand a Greater Judgment ........ 18

6.    The Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation ................ 19

II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ......................................................................................................................... 21

A.    The Settlement Class Meets All Prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure ................................................................................. 21

1.    Numerosity – The Class is Sufficiently Numerous ........................... 21

2.    Commonality – Questions of Law or Fact are Common to the Class 21

3.    Typicality – Plaintiffs' Claims are Typical ....................................... 22

4.    Adequacy – Plaintiffs Will Fairly and Adequately Protect the Class. 23

B.    The Settlement Class Meets the Requirements of Rule 23(b) ........................ 23

1.    Common Questions of Law or Fact Predominate Over Individual Issues ................................................................................................. 24

2.    Class Treatment is the Superior Method of Adjudication .................. 25

III.    THE COURT SHOULD APPOINT CO-LEAD COUNSEL AS CLASS COUNSEL .... 26

IV.    THE COURT SHOULD AUTHORIZE NOTICE TO THE CLASS ............................. 26

V.    THE COURT SHOULD SCHEDULE THE FINAL APPROVAL HEARING ............. 27

CONCLUSION ...................................................................................................................... 28

**TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Allegra v. Luxottica Retail N. Am.*,
    341 F.R.D. 373 (E.D.N.Y. 2022) ................................................................................. 22

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................... 24, 25, 26

*Aramburu v. Healthcare Fin. Servs., Inc.*,
    No. 02- CV-6535, 2009 WL 1086938 (E.D.N.Y. Apr. 22, 2009) ..................................... 15

*Ayzelman v. Statewide Credit Servs. Corp.*,
    242 F.R.D. 23 (E.D.N.Y. 2007) .................................................................................. 15

*Bakalar v. Vavra*,
    237 F.R.D. 59 (S.D.N.Y. 2006) .................................................................................. 25

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................ 12

*Belfiore v. Procter & Gamble Co.*,
    311 F.R.D. 29 (E.D.N.Y. 2015) .................................................................................. 25

*Berkson v. Gogo LLC*,
    147 F. Supp. 3d 123 (E.D.N.Y. 2015) ......................................................................... 20

*Berkson v. Gogo LLC*,
    No. 14-CV-1199, 2016 WL 1376544 (E.D.N.Y. Apr. 5, 2016) ...................................... 20

*Cantor v. Beech-Nut Nutrition Co.*,
    No. 25-821-CV, 2026 WL 304246 (2d Cir. Feb. 5, 2026) ............................................ 18

*Catholic Healthcare W. v. U.S. Foodservice Inc.* (*In re U.S. Foodservice Inc. Pricing Litig.*),
    729 F.3d 108 (2d Cir. 2013) ...................................................................................... 24

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .............................................................................. 9, 13, 19

*Copley v. Bactolac Pharm., Inc.*,
    No. 2:18-CV-00575, 2023 WL 2470683 (E.D.N.Y. Mar. 13, 2023) .............................. 20

*Cordes & Co. Fin. Sers. V. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ........................................................................................ 10

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001)................................................................................................. 25

*Cymbalista v. JPMorgan Chase Bank, N.A.*,
No. 20 CV 456, 2021 WL 7906584 (E.D.N.Y. May 25, 2021) ..................................................... 11

*D.S. v. New York City Dep't of Educ.*,
255 F.R.D. 59 (E.D.N.Y. 2008) ................................................................................................. 16

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ........................................................................................................ 11

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008)................................................................................................ 23

*Dial Corp. v. News Corp.*,
317 F.R.D. 426 (S.D.N.Y. 2016)................................................................................................ 16

*Dover v. Brit. Airways, PLC (UK)*,
323 F. Supp. 3d 338 (E.D.N.Y. 2018)........................................................................................... 9

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 23 (E.D.N.Y. 2010)........................................................................................... 14

*Eidelman v. Sun Prods. Corp.*,
No. 21-1046-cv, 2022 WL 1929250 (2d Cir. June 6, 2022) ......................................................... 18

*Flores v. CGI Inc.*,
No. 22-CV-350, 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) .................................................... 17

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................... 19, 21, 22

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) .................................................................................................................. 18

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)..................................................... 20

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
328 F.R.D. 35 (W.D.N.Y. 2018).................................................................................................. 15

*Guido v. L'Oreal, USA, Inc.*,
284 F.R.D. 468 (C.D. Cal. 2012) ................................................................................................ 25

*Guzman v. VLM, Inc.*,
No. 07-CV-1126, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008)....................................................... 25

iv

*Hart v. BHH, LLC*,
  No. 15-cv-4804, 2017 WL 2912519 (S.D.N.Y. July 7, 2017) ........................................................ 22

*Hasemann v. Gerber Prods. Co.*,
  331 F.R.D. 239 (E.D.N.Y. 2019) ................................................................................................ 25

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014)................................................................................................... 8

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................................................................... 11

*In re Baby Food Prods. Liab. Litig.*,
  No. 24-md-03101, 2026 WL 559857 (N.D. Cal. Feb. 27, 2026)................................................ 4, 5

*In re Bear Stearns Cos., Inc. Sec., Der., and ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................................ 16

*In re Beech-Nut Nutrition Co. Baby Food Litig.*,
  771 F. Supp. 3d 96 (N.D.N.Y. 2025) ......................................................................................... 18

*In re Citigroup Pension Plan Erisa Litig.*,
  241 F.R.D. 172 (S.D.N.Y. 2006)................................................................................................ 23

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13md2476, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)..................................................... 13

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)...................................................................................................... 22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009); *Baffa v. Donaldson,
  Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000).......................................................... 23

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004)................................................................................................ 17

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................................................ 11

*In re Hain Celestial Heavy Metals Baby Food Litig.*,
  No. 21-cv-00678, 2024 WL 5239510 (E.D.N.Y. Dec. 27, 2024) ................................................. 4

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................................ 16

v

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................... 19

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  609 F. Supp. 3d 942 (N.D. Cal. June 28, 2022) ............................................................... 25

*In re Kind LLC "Healthy & All Natural" Litig.*,
  337 F.R.D. 581 (S.D.N.Y. 2021) .................................................................................... 22

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...................................... 27

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020) ............................................................................. 8

*In re Nassau Cty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) ........................................................................................... 25

*In re Nissan Radiator/Transmission Cooler Litig.*,
  No. 10 CV 7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ...................................... 23

*In re PaineWebber Ltd. P'ships Litig.*, .
  147 F.3d 132 (2d Cir. 1998) ........................................................................................... 8

*In re PaineWebber Ltd. P'ships*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................... 19

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................... 10

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  No. 05-MD-1720, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ................................... 9

*In re Plum Baby Food Litig.*,
  No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025) .............................................. 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998 (S.D.N.Y. July 21, 2010) ................... 14

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................................. 11

*In re Traffic Exec. Ass'n-E. Railroads*,
  627 F.2d 631 (2d Cir. 1980) ........................................................................................... 9

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ................................. 16

*Jara v. Felidia Restaurant, Inc.*,
   No. 17 Civ. 9622, 2018 WL 11225741 (S.D.N.Y. Aug. 20, 2018)................................................ 8, 11

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)........................................................................................................ 21

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ................................................... 11

*Kurtz v. Costco Wholesale Corp.*,
   818 F. App'x 57 (2d Cir. 2020)..................................................................................................... 25

*Kurtz v. Kimberly-Clark Corp.*,
   414 F. Supp. 3d 317 (E.D.N.Y. 2019)........................................................................................... 25

*Landon R. v. Hain Celestial Grp., Inc.*,
   Case No. 23STCV24844 (Cal. Super. Ct. Dec. 3, 2025) ................................................................. 4

*Lowe v. NBT Bank, N.A.*,
   No. 3:19-CV-1400, 2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022) ................................... 17, 18, 23

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................................ 15

*Manley v. Midan Rest. Inc.*,
   No. 14 Civ. 1693, 2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016).................................................... 15

*Marino v. COACH, Inc.*,
   No. 1:16-cv-01122, 2021 WL 827647 (S.D.N.Y. Mar. 3, 2021)...................................................... 20

*McLaughlin v. IDT Energy*,
   No. 14 CV 4107, 2018 WL 3642627 (E.D.N.Y. July 30, 2018)....................................................... 14

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)..................................................................................................... 10

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015).............................................................................................. 25

*Mills v. Capital One, N.A.*,
   No. 14 Civ. 1937, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ................................................... 18

*Moses v. N.Y. Times Co.*,
   79 F.4th 235 (2d Cir. 2023)........................................................................................................... 13

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) .................................................................................................. 24

*N.C. v. Hain Celestial Grp., Inc.*,
   No. 21STCV22822, 2023 WL 8261722 (Cal. Super. Ct. Sep. 1, 2023) .......................................... 4

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) .................................................................................................. 19

*Pearlstein v. BlackBerry Ltd.*,
   No. 13 Civ. 7060 (Consolidated), 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) .......................... 14

*Peoples v. Annucci*,
   180 F. Supp. 3d 294 (S.D.N.Y. 2016) ....................................................................................... 8

*Philemon v. Aries Cap. Partners, Inc.*,
   No. 18 CV 1927, 2019 WL 13224983 (E.D.N.Y. July 1, 2019)
   ................................................................................................................................. 19, 20

*Pizzaro v. Sazerac Co., Inc.*,
   No. 23-CV-2751, 2025 WL 2682673 (S.D.N.Y. Sept. 18, 2025) ................................................. 21

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) .................................................................................................. 24

*Rodriquez v. It's Just Lunch Int'l*,
   No. 07-CV-09227, 2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) ................................................. 19

*Schwartz v. Novo Industri A/S*,
   119 F.R.D. 359 (S.D.N.Y. 1988) ............................................................................................. 16

*States of N.Y. & Md. v. Nintendo of Am., Inc.*,
   775 F. Supp. 676 (S.D.N.Y. 1991) .......................................................................................... 20

*Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS),
   2021 WL 736962 (N.D.N.Y. Feb. 25, 2021) ............................................................................. 17

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) .................................................................................................... 24

*Tart v. Lions Gate Ent. Corp.*,
   No. 14-CV-8004, 2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015) ................................................. 25

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N.*,
   No. 01 Civ. 11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .................................................................................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................................... 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................................. 8, 19, 26

*Wilson v. Walmart, Inc.*,
   No. 3:21-cv-82, ECF No. 174 (E.D. Ark. Apr. 17, 2024) ................................................................ 5

*Zivkovic v. Laura Christy LLC*,
   329 F.R.D. 61 (S.D.N.Y. 2018) ................................................................................................. 21

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

Plaintiffs,[1] individually and as representatives of the Class, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Conditional Certification of Settlement Class.[2]

## INTRODUCTION

Plaintiffs brought this class action alleging that Defendant Nurture, LLC ("Defendant" or "Nurture") sold its baby food Products[3] to consumers without disclosing the presence or risk of arsenic, cadmium, lead, or mercury ("Heavy Metals") and perchlorate. Plaintiffs also allege that the potential presence of Heavy Metals rendered the Products' marketing as high quality, nutritious, made with superior and clean ingredients, and that its Products are subject to testing, misleading. Plaintiffs do not claim their children suffered any bodily harm from consuming Nurture's baby food. Plaintiffs instead allege that they would have paid less for those foods if they had known about the presence of Heavy Metals and perchlorate.

Defendant expressly denies Plaintiffs' allegations and denies any liability or wrongdoing. Defendant asserts that trace metals are "present in the environment and may enter the food supply through soil, water or air" and thus "cannot be completely avoided in the fruits, vegetables, or grains that are the basis for baby foods."[4] Defendant contends that courts nationwide have dismissed nearly all cases presenting similar theories, including because Heavy Metals are ubiquitous in the

---

[1] The named Plaintiffs in this action include Marie Mezile, Laura Barbu, Charlotte Willoughby, Diego Galeana, Chey'na Micciche, Kelly McKeon, and Hilary Paris. Each has agreed to the proposed settlement.

[2] The Parties' Settlement Agreement and Release ("Settlement Agreement") is attached as Exhibit 1 to the Joint Declaration of Lori G. Feldman and Rebecca A. Peterson in Support of Plaintiffs' Motion ("Joint Decl."), filed concurrently herewith. Capitalized terms shall have the meanings set forth in the Settlement Agreement.

[3] According to the Settlement Agreement, the "Products" are "all baby food and toddler food products marketed, manufactured and distributed by Nurture during the Class Period, including but not limited to all bars, pouches, baby food jars, puffs, bowls, snack products, snackers, baking mixes, cookies, yogis, Greek yogis, creamies, cookies, pudding, teethers, teething crackers, rice cakes, cereals, formulas, toddler milks, and fruity sticks." (Settlement §I(Z).) (Referred to also "Baby Foods" herein).

[4] United States Food & Drug Administration ("FDA") *Response to Questions About Levels of Toxic Elements in Baby Food, Following Congressional Report* (Feb. 16, 2021), https://www.fda.gov/food/hfp-constituent-updates/fda-response-questions-about-levels-toxic-elements-baby-food-following-congressional-report.

environment and food supply and no reliable scientific evidence establishes trace levels of Heavy Metals cause harm. Defendant similarly anticipates a successful defense in this lawsuit on summary judgment and class certification but nevertheless agreed to resolve this action after five years of litigation to obtain finality and avoid the expense, burden, and delay of continued litigation.

The nationwide class action settlement is an excellent result for this litigation, given the risks to both sides on the merits and class certification and the uncertainty of potential appeals. It provides meaningful monetary benefits to all individuals who purchased the Products between February 4, 2015, and the date the Preliminary Approval Order is entered ("Settlement Class") while eliminating the uncertainty of further litigation and potential appeals. The Settlement provides for a non-reversionary fund of $3,400,000 (the "Cash Settlement Fund") and up to $3,400,000 in vouchers for certain Products (the "Voucher Settlement Program").

After over five years of litigation, including extensive discovery, Plaintiffs understand the strengths and weaknesses of their claims. Although the Parties disagree on who would ultimately prevail, the Parties recognize that they would face hurdles, risks, and additional delay in litigating the claims to a successful adversarial resolution. Given the immediate and tangible benefits the Settlement will provide to the Settlement Class, Plaintiffs respectfully request that this Court (1) grant preliminary approval of the Settlement, (2) conditionally certify the Settlement Class, (3) designate Plaintiffs as Class Representatives, (4) designate Lori G. Feldman and Rebecca A. Peterson of Hecht Partners LLP as Class Counsel;[5] (5) order direct notice to be provided to the Settlement Class after approving the form and manner of notice; (6) authorize retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator; and (7) set a schedule for final approval of the Settlement and Plaintiffs' request for service awards, attorneys' fees, and expenses.

---

[5] The Court appointed Lori G. Feldman and Rebecca A. Peterson as Interim Co-Lead Counsel for the proposed class. (Dkt No. 150.)

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Statement of the Case

On February 4, 2021, a Congressional Subcommittee released a report that purported to describe the presence of Heavy Metals in certain baby foods, including some foods manufactured by Nurture. Following the report, various lawsuits were filed against baby food companies, including Nurture, alleging these companies sold their baby foods without disclosing the risk of Heavy Metals and perchlorate.

On August 30, 2021, this Court consolidated the actions. (Dkt. No. 47.) On August 8, 2022, the Court appointed Ms. Feldman and Ms. Peterson as Co-Lead Counsel for the putative class pursuant to Fed. R. Civ. P. 23(g)(3). (Dkt. 150.) Co-Lead Counsel filed a Consolidated Class Action Complaint on October 7, 2022, alleging violations of consumer protection statutes and common law claims. (Dkt. 157.)  Nurture moved to dismiss on November 21, 2022. (Dkts. 162-165.) The Court denied the motion without prejudice based on a lack of subject matter jurisdiction as pleaded. (Dkt. 207.) On March 27, 2024, the Court issued an Order to Show Cause requiring a letter from each side showing why the case should not be dismissed for lack of federal subject matter jurisdiction. (Dkt. 209.)

On April 10, 2024, Plaintiffs filed their First Amended Consolidated Class Action Complaint ("FACC"). (Dkt. 214.) Thereafter, Nurture moved to dismiss. (Dkts. 225-227.) On March 26, 2025, the Court entered its Order denying in part and granting in part the motion. (Dkt. 265.) Although the Court dismissed Plaintiffs' unjust enrichment claim and the California statutory False Advertising Law and Unfair Competition Law claims, the Court allowed all other claims to proceed. *Id.* Nurture answered the FACC on April 23, 2025. (Dkt.. 272.)

The Parties subsequently engaged in extensive discovery. (Joint Decl. ¶¶18-22.) Plaintiffs served on Defendant four sets of Requests for Production with 57 total requests, two sets of Interrogatories with 5 interrogatories, and four Requests for Admission. (Joint Decl. ¶18.) Nurture

3

responded to Plaintiffs' discovery requests and produced thousands of pages of documents. (Joint Decl. ¶20.) Nurture served on each Plaintiff approximately 56-66 Requests for Production and 22 Interrogatories, which Plaintiffs responded to and supplemented. (*See* Joint Decl. ¶19.) The Parties noticed or scheduled depositions of the seven (7) Plaintiffs and at least ten (10) of Defendant's current and former employees. (Joint Decl. ¶22.)

During this time, mediation was scheduled and the Parties submitted a joint letter motion to stay the case on October 8, 2025. (Dkt. 293.) The Court granted that letter motion. (Dkt. 294.)

### B.   Defendant's Position

Nurture manufactures several infant and toddler food product lines. Defendant maintains that its food is safe and its advertising and product labels are accurate and truthful. Trace levels of Heavy Metals are inherently present in the environment and may enter the food supply through soil, water, or air. As the FDA has recognized, because these metals are inherently present, they are "unavoidable in the general food supply" and "cannot be completely avoided in the fruits, vegetables, or grains that are the basis for baby foods."[6]

Moreover, courts nationwide have dismissed similar cases or held that plaintiffs failed to present scientific evidence that baby food, including Nurture's products, harmed children due to trace metals. *See, e.g., In re Baby Food Prods. Liab. Litig.*, No. 24-md-03101-JSC, 2026 WL 559857, at \*1 (N.D. Cal. Feb. 27, 2026); *Landon R. v. Hain Celestial Grp., Inc.*, Case No. 23STCV24844 (Cal. Super. Ct. Dec. 3, 2025); *N.C. v. Hain Celestial Grp., Inc.*, No. 21STCV22822, 2023 WL 8261722 (Cal. Super. Ct. Sep. 1, 2023); *In re Plum Baby Food Litig.*, No. 24-2766, 2025 WL 1200700, at \*1 (9th Cir. Apr. 25, 2025); *In re Hain Celestial Heavy Metals Baby Food Litig.*, No. 21-cv-00678 (NRM) (AYS), 2024 WL 5239510 (E.D.N.Y. Dec. 27, 2024); *Wilson v. Walmart, Inc.*, No. 3:21-cv-82-DPM, ECF No. 174,

---

[6]*FDA Response to Questions, supra* note 3; *FDA Announces New Actions Aimed at Further Reducing Toxic Elements in Food for Babies, Young Children*, (Mar. 5, 2021), https://content.govdelivery.com/accounts/USFDA/bulletins/2c55cf0.

at 1 (E.D. Ark. Apr. 17, 2024). As the MDL court overseeing the personal injury litigation put it, "Plaintiffs have not identified any scientific studies of whether baby food, let alone Defendants' baby food, can cause [autism] or ADHD." *Baby Food Prods. Liab.*, 2026 WL 559857, at *1 (excluding plaintiffs' general causation experts after a week-long evidentiary hearing and oral argument). Accordingly, should this Action proceed, Defendant believes it would defeat Plaintiffs' claims at summary judgment, class certification, or trial.

### C.    Mediation and Settlement

On January 23, 2026, the Parties participated in an in-person mediation with retired Judge Margaret A. Nagle. (Joint Decl. ¶25.) Although the Parties were unable to reach agreement during the mediation, they continued, with Judge Nagle's assistance, to negotiate over the course of many meetings, discussions, and calls before reaching an agreement in principle. The Parties then negotiated and finalized the formal Settlement Agreement. (Joint Decl. ¶27.)

### D.    Settlement Agreement Terms
#### 1.  The Class Definition

The Settlement Class consists of "all persons in the United States who purchased the Products during the Class Period." (Settlement §I(GG).) The "Class Period" is February 4, 2015, to the date the Court enters the Preliminary Approval Order, inclusive. (Settlement §I(F).)

#### 2.  The Cash Settlement Fund

Nurture will establish a Cash Settlement Fund to provide for payment of cash benefits to the Settlement Class, Plaintiffs' Service Awards, Class Counsel's fees and costs, and any Settlement Costs[7] that exceed Nurture's separate payment of up to $400,000.[8] (Settlement §III(C)(1).) Nurture

---

[7] "Settlement Costs" means all costs and fees charged by the Settlement Administrator to administer this settlement pursuant to this Agreement and any orders of the Court. (Settlement §I(JJ).)

[8] In addition to the Cash Settlement Fund, Nurture will pay up to $400,000 to the Settlement Administrator for Settlement Costs. (Settlement §I(FF).) In the event Settlement Costs exceed $400,000, the excess will be paid from the Cash Settlement Fund. (Settlement §III(C)(3)).

will pay $3,400,000 cash into a common fund which will be non-reversionary to Nurture. (Settlement §§I(LL), III(C)(1), (E)(1).) Settlement Class Members may elect to receive a Cash Settlement Award in the amount of $1.00 per claim, paid from the Cash Award Fund.

### 3. Voucher Settlement Program

In addition to the Cash Settlement Fund, Nurture will establish a Voucher Settlement Program to provide Voucher Settlement Awards to Settlement Class Members who submit a valid Claim Form electing such an award. (Settlement §III(C)(2).) The total amount of the Voucher Settlement Awards in the Voucher Settlement Program will not exceed $3,400,000 in retail value.[9] (*Id*.) Settlement Class Members who submit a valid Claim Form electing a Voucher Settlement Award shall receive a voucher for one of the following products: (i) Happy Tot Bars, (ii) Happy Baby Creamies; (iii) Happy Baby Teethers; or (iv) Happy Baby Yogis or Greek Yogis. (*Id*.) Retail value of the Voucher Settlement Awards shall be calculated using an average retail value of $5.39 per product. (*Id*.) The Voucher Settlement Awards will be issued on a first-come, first-served basis and delivered via a redemption code emailed to electing Settlement Class Members for redemption in store at participating retailers. (*Id*. §III(D)(1)(b).) They do not expire. Each voucher is for a full product, so Settlement Class Members will not pay anything to obtain the full benefit of the voucher. Moreover, voucher-eligible products exceed the costs of certain products at issue in the case, and they are snacks (as opposed to purees and baby food), to account for the fact that Settlement Class Members' children are now older. To the extent the total number of vouchers claimed through the Voucher Award Program is less than 210,266 vouchers, Defendant will donate product *cy pres* so that the number of vouchers claimed by Settlement Class Members and product donated by Defendant totals 210,266 vouchers and products,

---

[9] If the total amount of Voucher Settlement Awards reaches $3,400,000 in retail value, those subsequently claiming Settlement Class Members will instead receive a Cash Settlement Award. If the total number of vouchers claimed is less than 210,266, Defendant will donate product *cy pres* so that the number of vouchers claimed and product donated totals 210,266, combined. (Settlement §§III(D)(1)(b), III(E)(2).)

combined.

**4.   Cash Settlement Awards and Voucher Settlement Awards**

Settlement Class Members may submit one or more Claims for a Settlement Award. Up to five (5) valid Claims will be honored per Settlement Class Member without Proof of Purchase, and up to ten (10) valid Claims will be honored per Settlement Class Member with Proof of Purchase. (Settlement §III(D)(1).) No more than fifteen (15) valid Claims will be honored per Settlement Class Household. (*Id.*) Settlement Class Members may opt to receive a Cash Settlement Award or a Voucher Settlement Award. (Settlement §§III(D)(1)(a)-(b).)

**5.   Release of Claims**

Plaintiffs and Settlement Class Members will release Nurture from all claims that were or could have been asserted against Nurture in the Consolidated Action, as specified in the Settlement Agreement. (*See* Settlement §III(B).) The release does not, however, encompass claims arising from personal injuries. (*Id.*)

**6.   Notice, Claims Process, and Settlement Administration**

Epiq will serve as the third-party Settlement Administrator for this Settlement. (Settlement §I(EE).) Epiq will be responsible for implementing the notice program to Settlement Class Members. (*Id.*) In addition, Epiq will receive and process claim forms, provide information needed by this Court related to Epiq's administration, and distribute awards to Settlement Class Members, as well as any other needed administrative tasks. (Settlement §III(D).)

**7.   Attorneys' Fees and Costs and Service Awards**

The Parties did not discuss attorneys' fees and reimbursement of costs prior to agreement on the material terms of the Settlement Agreement. (Joint Decl. ¶28.) Class Counsel may petition this Court for a fee award to be payable from the Cash Settlement Fund. (Settlement §§III(C)(1), III(F).)

Defendant will not object to such a motion so long as the amount requested for attorneys' fees is less than or equal to $2,266,666.00, which is one-third of the value of the Cash Settlement Fund and Voucher Settlement Program, combined. (Settlement §III(F)(1).) Class Counsel will seek Service Awards for each Class Representative to be paid from the Settlement Fund. (Settlement §III(F)(2).) Nurture will not oppose any request for Service Awards that does not exceed $5,000 for each Class Representative. (*Id.*)

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    The Standard and Procedures for Granting Preliminary Approval

The Second Circuit has a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also* (*In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 310 (S.D.N.Y. 2020) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") (quotations omitted). "Courts have discretion regarding the approval of a proposed class action settlement[,]" and when exercising this discretion, "courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Jara v. Felidia Restaurant, Inc.*, No. 17 Civ. 9622, 2018 WL 11225741, at *1 (S.D.N.Y. Aug. 20, 2018). There is a "presumption in favor of settlement, '[a]bsent fraud or collusion'[.]" *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (quoting *In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014)).

Federal Rule of Civil Procedure 23(e) sets out a two-stage process for approving a proposed settlement. First, the "parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Then, if

the Court concludes that it "will likely be able to" both approve the settlement under Rule 23(e)(2) and certify the class for purposes of judgment on the settlement, the Court should grant preliminary approval and direct notice in a reasonable manner to all class members to be bound by the settlement. Fed. R. Civ. P. 23(e)(1)(B).

Consideration under Rule 23(e)(2) as to whether a proposed settlement will be fair, reasonable, and adequate includes whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms' length; (C) the relief is adequate, taking into account [the factors set forth in subsections (i)-(iv)]; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). These factors are not intended to "displace" any factor previously adopted, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018). For this reason, the traditional factors—known as "*Grinnell* factors"—used by Second Circuit courts to evaluate the propriety of a class action settlement are still relevant. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) (significant overlap between the Rule 23(e)(2) factors and the nine *Grinnell* factors such that they "complement, rather than displace each other.").

Rule 23(e) remains entirely consistent with the long-standing rule that preliminary approval, "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980) (citation omitted); *Dover v. Brit. Airways, PLC (UK)*, 323 F. Supp. 3d 338, 349 (E.D.N.Y. 2018) ("In contrast to the rigorous inquiry the court must conduct at the final approval stage, to grant preliminary approval, the court need only determine 'that there is . . . "probable cause" to submit the [proposed settlement]'[.]") (quoting *Menkes v. Stolt-Nielsen S.A.*, 270

F.R.D. 80, 101 (D. Conn. 2010)). The proposed Settlement satisfies all of the Rule 23(e)(2) and relevant *Grinnell* factors, and should be preliminarily approved as fair, reasonable, and adequate.

**B.      Rule 23(e)(2) Factors Are Met**
**1.      Class Counsel and Plaintiffs Adequately Represented the Class (Rule 23(e)(2)(A))**

"Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) (quoting *Cordes & Co. Fin. Sers. V. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). Plaintiffs and Class Counsel have adequately represented the Class.

Plaintiffs have pursued the objective they share with the Settlement Class of establishing proof of the FACC allegations by working with Class Counsel in the preparation of the complaints and responding and supplementing document requests, interrogatories, and requests for admission. (*See* Joint Decl. ¶11, 14, 19-20, 55.)

Class Counsel has vigorously represented the Settlement Class. Counsel's representation has included (1) investigation and preparation of initial complaints, the Consolidated Complaint (Dkt. 157), and the FACC (Dkt. 214); (2) extensive research and analysis to address and successfully oppose Nurture's comprehensive motion to dismiss the case in its entirety; (3); substantial document and written discovery and discovery negotiations; (4) gathering of Plaintiffs' documents and relevant information to respond to Nurture's discovery requests; (5) extensive correspondence with defense counsel relating to numerous discovery issues and review and analysis of discovery materials produced by defendant; (6) hiring of experts; (7) participation in mediation and extensive subsequent settlement discussions; and (8) achievement of a favorable Settlement on behalf of the Settlement Class. (Joint Decl. ¶¶6-11, 14, 18-27, 55.)

10

As a result, Plaintiffs and Class Counsel developed a strong understanding of the strengths and weaknesses of the claims as they engaged in settlement negotiations and ultimately reached agreement on the substantive terms of the proposed Settlement. Class Representatives and Class Counsel submit that, at final approval, Rule 23(e)(2)(A) will be satisfied because they have zealously represented and pursued the best interests of the proposed Settlement Class at each stage of the litigation. Additionally, neither Plaintiffs nor Class Counsel have any conflicts of interest with the Class.

### 2. The Settlement Was Negotiated at Arm's Length by Informed Counsel (Rule 23(e)(2)(B))

In the Second Circuit, "[i]f a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, 'the Settlement will enjoy a presumption of fairness.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *Id*. Moreover, the Parties participated in a mediation before the Honorable Margaret A. Nagle and engaged in rigorous settlement discussions. (Joint Dec. ¶¶24-27.) "The participation of a former judicial officer as a mediator lends credibility to the negotiation process and supports the assertion that a settlement was reached without collusion and at arm's length." *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20 CV 456 (RPK)(LB), 2021 WL 7906584, at *6 (E.D.N.Y. May 25, 2021) (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008)); *see also Jara*, 2018 WL 11225741, at *2 ("[a] settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'") (quoting *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011)).

As described above, the negotiations culminating in this Settlement were intense, complex,

11

conducted in good faith, and at arm's length by informed and experienced counsel on both sides. Class Counsel, armed with the knowledge gained through discovery and independent investigation, was able to meaningfully assess the strengths and weaknesses of the Parties' respective positions. Following the in-person session with Judge Nagle, the Parties continued to engage with the mediator until a resolution in principle was finally achieved. (Joint Decl. ¶¶25-26.)

Here, both counsel for Plaintiffs and for Defendant are experienced in class action litigation, and Plaintiffs' counsel is well-versed in litigation involving Heavy Metals in baby foods and other consumer products. (*See* Joint Decl. ¶¶48-53; Ex. 3.) Class Counsel's experience in similar matters confirms that "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013). Class Counsel are well-positioned to assess the benefits of the Settlement balanced against the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses.

The Settlement itself includes no indicia of collusion. No fees were negotiated prior to agreement on the material terms of the Settlement Agreement and will be decided by the Court. (Joint Decl. ¶¶41-42.) And under no circumstance will any amount of the Cash Settlement Fund revert to Nurture. (Joint Decl. ¶33.)

### 3. The Settlement Provides Adequate Relief to the Class (Rule 23(e)(2)(C)(i))

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv). Consideration of these factors here shows a likelihood that this will be satisfied at final approval.

The "costs, risks, and delay of trial and appeal" factor "subsumes several *Grinnell* factors . . .

including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Payment Card Interchange Fee Litig.*, 330 F.R.D. at 36. Each *Grinnell* factor is satisfied.

As to "the effectiveness of any proposed method of distributing relief to the class," the Notice Plan outlined below was proposed by experienced and competent counsel and the Settlement Administrator and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *GSE Bonds*, 414 F. Supp. 3d at 694-95 (quoting *In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 WL 2731524, at *4 (S.D.N.Y. Apr. 26, 2016)).

As discussed above, attorneys' fees and reimbursement of costs were not discussed prior to agreement on the material terms of the Settlement Agreement. (Joint Decl. ¶¶41-42.) Class Counsel will petition this Court for an award of fees and costs to be payable from the Cash Settlement Fund. (Settlement §§III(C)(1), III(F).) Finally, the Settlement is the only agreement contemplated by and made relating to the proposal. *GSE Bonds*, 414 F. Supp. 3d at 696.

### 4.      The Settlement Treats All Class Members Equitably

The final inquiry is whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). There is no preferential treatment to the Class Representatives or any segments of the Class. Class Counsel intend to apply for Service Awards for the Class Representatives. (Settlement §III(F)(2).) Such service awards alone do not create an impermissible conflict of interest. *Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023) ("[C]ourts evaluating the substantive fairness of a settlement must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members.").

13

###### C.    The *Grinnell* Factors
###### 1.    The Complexity, Expense and Likely Duration of the Litigation

Consumer class action lawsuits, like this action, are typically complex, expensive, and lengthy. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010). By reaching a settlement prior to class certification or trial, Plaintiffs avoid significant expense and delay and ensure recovery for the class. *See Bank Holocaust Litig.*, 80 F. Supp. 2d at 174  ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."). "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060 (CM) (KHP) (Consolidated), 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022) (quoting *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998, at *11 (S.D.N.Y. July 21, 2010)).

Further litigation here would result in significant additional expenses and delays relating to potential recovery. Discovery efforts to establish liability and prove class-wide damages would have continued. A favorable resolution of this case would require engaging experts and successful outcomes on class certification, summary judgment, *Daubert* challenges, a lengthy trial, and likely appeals, all of which would be costly and time-consuming for the Parties and the Court, as well as risking that the Class would recover nothing at all. *See McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *10 (E.D.N.Y. July 30, 2018) (first *Grinnell* factor favored approval where "the parties would likely need to brief motions for class certification, summary judgment, and potentially proceed to trial").

At class certification, Defendant would most certainly oppose certification, arguing that Plaintiffs' claims require individualized inquiries into whether each Product contained Heavy Metals and whether Plaintiffs suffered a resulting economic injury. Although confident regarding

14

certification, Plaintiffs would be required to expend significant resources responding to Defendant's opposition and efforts at decertification and/or appeal. Plaintiffs also expect there would likely be a lengthy and expensive battle of experts regarding consumer expectations about Heavy Metals in the Products; whether the Products contained Heavy Metals; whether damages were suffered by Class Members; and the reliability of competing damages models, consumer surveys, and statistical analyses employed to derive the price premium that Plaintiffs alleged consumers paid. Each step towards trial would involve vigorous contests.

If the Court certified a class and Plaintiffs survived summary judgment, the Parties anticipate a lengthy trial that would consume tremendous resources. Moreover, "[e]ven assuming that plaintiffs were successful in defeating any pretrial motions filed by defendants, and were able to establish defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 55 (W.D.N.Y. 2018) (quoting *Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 27 (E.D.N.Y. 2007)); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Delay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait years for any recovery, further reducing its value.").

By contrast, this Settlement provides guaranteed relief to the Settlement Class in an efficient and timely manner on terms that are fair, reasonable, and adequate to the Class. *See Aramburu v. Healthcare Fin. Servs., Inc.*, No. 02- CV-6535 (MDG), 2009 WL 1086938, at *3 (E.D.N.Y. Apr. 22, 2009) ("[T]he settlement provides certain compensation to the class members now rather than awaiting an eventual resolution that would result in further expense without any definite benefit."). Although both sides are certain of the merit of their positions, "litigation of this matter . . . through trial would be complex, costly and long." *Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2016 WL 1274577, at *9 (S.D.N.Y. Mar. 30, 2016). This factor weighs strongly in favor of preliminary approval.

**2.      The Reaction of the Class to the Settlement**

It is premature to address the reaction of the Settlement Class at the preliminary approval stage. *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008). But the Class Representatives' approval of the Settlement and the Settlement Agreement's robust Notice Plan weigh in favor of preliminary approval.

**3.      The Stage of the Proceedings and the Amount of Discovery Completed**

The third *Grinnell* factor considers "whether the parties had adequate information about their claims, such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (quoting *In re Bear Stearns Cos., Inc. Sec., Der., and ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)). As set forth in the Joint Declaration, Plaintiffs have conducted substantial discovery relevant to the claims and defenses in this litigation, as well as independent factual investigation. (Joint Decl. ¶¶11, 14, 18-22, 55.) *See D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class in reaching a settlement.'") (quoting *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 362 (S.D.N.Y. 1988)). The active and fulsome discovery that the Parties completed at the time of the mediation provided Plaintiffs with substantial information from which they could evaluate the adequacy and fairness of a proposed settlement.

**4.      The Risks of Establishing Liability and Damages, and Maintaining the Class Action Through Trial**

"Courts generally consider the fourth, fifth, and sixth *Grinnell* factors together." *Pearlstein*, 2022 WL 4554858, at *5 (quoting *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 432 (S.D.N.Y. 2016)). In weighing the risks of certifying a class and establishing liability and damages, "the Court is not

required to decide the merits of the case, resolve unsettled legal questions, or to 'foresee with absolute certainty the outcome of the case.'" *Lowe v. NBT Bank, N.A.*, No. 3:19-CV-1400 (MAD/ML), 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022) (quoting *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, at *8 (N.D.N.Y. Feb. 25, 2021)). "[R]ather, 'the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). Plaintiffs recognize that, as with any litigation, uncertainties exist. Defendant continues to deny Plaintiffs' allegations, and should this matter proceed, Defendant will vigorously defend itself on the merits, at each stage of litigation and likely on appeal.

Most fundamentally, while Plaintiffs believe a reasonable consumer is unaware that the Products could contain Heavy Metals and/or perchlorate, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to the alleged presence and materiality of trace Heavy Metals and perchlorate in the Products, whether any consumer is injured, and, if so, the calculation of damages. For these reasons, the risks of establishing liability and damages at trial and on appeal strongly support preliminary approval.

Moreover, before getting to trial, Plaintiffs would need to obtain class certification, which Defendant would vigorously oppose. Should the action be certified, Defendant would likely move for summary judgment. These risks are not minimal or hypothetical. As explained above, Courts across the nation have dismissed numerous cases alleging nearly identical claims against manufacturers of baby food at the pleading or summary judgment stage, highlighting the inherent risks if this case proceeded.[10]

---

[10] For example, in similar litigation against Beech-Nut Nutrition Company, the plaintiffs' case was twice dismissed, first on primary jurisdiction grounds and then, after appeal and remand, on the basis that the allegations were insufficient

This case settled before class certification and the requested certification is for settlement purposes only. In addition to the challenges inherent in certifying a potential nationwide class, Plaintiffs must proffer a suitable mechanism for calculating damages in the form of a class-wide price premium. Although Plaintiffs believe they would do so to the Court's satisfaction (*see Eidelman v. Sun Prods. Corp.*, No. 21-1046-cv, 2022 WL 1929250, at \*1 (2d Cir. June 6, 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'")), this proposed settlement eliminates the unavoidable risk that they could not. Furthermore, even if the Court certified the class, the ruling may be later vacated. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Given the risks, this factor supports preliminary approval. *See*, *e.g.*, *Mills v. Capital One, N.A.*, No. 14 Civ. 1937(HBP), 2015 WL 5730008, at \*14 (S.D.N.Y. Sept. 30, 2015) ("[V]ictory in a contested suit would have been far from clear as there was case law contrary to plaintiffs' position.").

Although Plaintiffs and lead counsel "believe that they would prevail on their claims asserted against Defendant[s], they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal." *Lowe*, 2022 WL 4621433, at \*8. Approval of the Settlement obviates the "[r]isk, expense, and delay" of further litigation, and these *Grinnell* factors thus support preliminary approval. *Id.*

**5.      The Ability of the Defendant to Withstand a Greater Judgment**

Even if Defendant could withstand a greater judgment, "this factor standing alone does not mean that the settlement is unfair." *Philemon v. Aries Cap. Partners, Inc.*, No. 18 CV 1927 (CLP),

---

regarding economic injury under the benefit-of-the bargain or price-premium theories, for purposes of Article III standing. *See In re Beech-Nut Nutrition Co. Baby Food Litig.*, 771 F. Supp. 3d 96 (N.D.N.Y. 2025). That decision was vacated and remanded by the Second Circuit, which found the district court failed to recognize Second Circuit precedent allowing the plaintiffs to plead their injury as an overpayment, rather than being required to allege injury from use of the product. *See Cantor v. Beech-Nut Nutrition Co.*, No. 25-821-CV, 2026 WL 304246, \*\*2-3 (2d Cir. Feb. 5, 2026).

2019 WL 13224983, at *12 (E.D.N.Y. July 1, 2019); *Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9. Where, as here, a Settlement provides fair compensation to Settlement Class Members, that Defendant may be able to fund a bigger settlement is no impediment to approval. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (approving proposed settlement class notwithstanding that "a corporation the size of Kodak could survive a greater judgment").

### 6.    The Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation

The determination of "whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Eastman Kodak*, 228 F.R.D. at 186 (quoting *Bank Holocaust Litig.*, 80 F. Supp. at 178). "The adequacy of the amount offered in a settlement must be judged not 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Rodriquez v. It's Just Lunch Int'l*, No. 07-CV-09227 (SN), 2020 WL 1030983, at *7 (S.D.N.Y. Mar. 2, 2020) (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012)). The Court instead need only find that the settlement falls "within the 'range of reasonableness' required for judicial approval." *In re PaineWebber Ltd. P'ships*, 171 F.R.D. 104, 131 (S.D.N.Y. 1997). The "range of reasonableness with respect to a settlement . . . recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Substantial monetary relief obtained in this Settlement is within this range of reasonableness notwithstanding the *possibility* the Settlement Class could recover a greater amount at trial. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Philemon*, 2019 WL 13224983, at *12 (quoting *Johnson*, 2011 WL 4357376, at *11); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974)

19

("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Rather, "[w]hen the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable." *Philemon*, 2019 WL 13224983, at *12. Moreover, when a settlement assures immediate payment of substantial amounts to Class Members and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road'," the settlement is reasonable. *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452(RLE), 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N.*, No. 01 Civ. 11814(MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).

Weighing the benefits of the Settlement here against the risks associated with proceeding in litigation and collecting on any judgment, the Settlement is more than reasonable. There is significant dispute between the Parties about the extent of Defendant's duty to disclose, the materiality as to the risk of Heavy Metals, whether Plaintiffs were injured and, if so, at what amount, causation, and whether Plaintiffs have standing. In light of the inherent risks of proceeding in litigation, the immediate monetary relief that the Settlement affords the Class is well within the range of reasonableness.[11]

In sum, each Rule 23(e) and *Grinnell* factor weighs in favor of approval, and the Court "will likely be able to . . . approve the proposal under Civil Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). If objections arise after notice is issued to the Class, the Court may reevaluate its determination.

---

[11] *See Copley v. Bactolac Pharm., Inc.*, No. 2:18-CV-00575-FB-PK, 2023 WL 2470683, at **5, 8, 15 (E.D.N.Y. Mar. 13, 2023) (granting final approval of class action settlement where class members could choose between a $10.00 coupon or cash from a pro rata settlement fund); *Marino v. COACH, Inc.*, No. 1:16-cv-01122-VEC (OTW), 2021 WL 827647, at *3 (S.D.N.Y. Mar. 3, 2021) (granting final approval of class action settlement where class members could choose between "vouchers or cash in the amount of 25% of the vouchers"); *Rodriquez*, 2020 WL 1030983, at *5 ("[T]he fact that individual class members may *choose* whether to receive cash *or* a voucher persuades the Court that the use of vouchers as one form of compensation does not require disapproval of the Settlement."); *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 129 (E.D.N.Y. 2015) (granting preliminary approval of class action settlement where class members received "promotional codes" that "allow[ed] for limited 'free' use of" the defendant's internet services) *accord Berkson v. Gogo LLC*, No. 14-CV-1199, 2016 WL 1376544, at *4 (E.D.N.Y. Apr. 5, 2016) (granting final approval); *States of N.Y. & Md. v. Nintendo of Am., Inc.*, 775 F. Supp. 676, 682 (S.D.N.Y. 1991) (approving settlement where sole compensation was coupon for defendants' product in settlement and noting that other courts have approved compensation in the sole form of coupons).

Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," the Court should grant preliminary approval. *See Eastman Kodak*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).

## II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

As Plaintiffs set forth below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should preliminarily certify the Settlement Class.

### A. The Settlement Class Meets All Prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure

The Settlement Class meets each prerequisite of Rule 23(a) which includes: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. Fed. R. Civ. P. 23(a).

### 1. Numerosity – The Class is Sufficiently Numerous

Under Rule 23(a)(1), Plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "numerosity is presumed when the putative class has at least forty members." *Pizzaro v. Sazerac Co., Inc.*, No. 23-CV-2751 (KMK), 2025 WL 2682673, at *3 (S.D.N.Y. Sept. 18, 2025) (quoting *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68-69 (S.D.N.Y. 2018)). Here, the proposed Settlement Class is at least in the hundreds of thousands and thus far exceeds this numerosity presumption. *See id*.

### 2. Commonality – Questions of Law or Fact are Common to the Class

Under Rule 23(a)(2), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 341, 350 (2011). "[F]or purposes of Rule 23(a)(2) '[e]ven a single

21

[common] question' will do." *Id.* at 359 (citation omitted) (Ginsburg, J., concurring). Here, common questions include, but are not limited to, whether Defendant's alleged failure to disclose that the Products potentially contained trace Heavy Metals was likely to deceive reasonable consumers. Resolving this common question would require evaluating the question's merits under a single objective standard, *i.e.*, the "reasonable consumer" test. *Hart v. BHH, LLC*, No. 15cv4804, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) (commonality met where "the putative class members relied on the same alleged misrepresentations of fact . . . and suffered the same economic harm.").

Here, there are numerous other issues of fact and law common to the Settlement Class, including: (a) whether Defendant's purported omissions were misleading; (b) whether Defendant owed a duty to disclose; (c) whether Defendant knew or should have known that the Products contained or may contain trace Heavy Metals or perchlorate; (d) whether Defendant's packaging was false, deceptive, or misleading; (e) whether Settlement Class Members paid an inflated price (a premium) for the Products because of Nurture's purported omissions; and (f) if so, how much of a premium the Settlement Class Members paid. The commonality requirement is met.

### 3. Typicality – Plaintiffs' Claims are Typical

Rule 23(a)(3) requires that the proposed class representatives' claims "are typical of the [class's] claims." Fed. R. Civ. P. 23(a)(3). Typicality requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments[.]" *Eastman Kodak*, 228 F.R.D. at 182 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he typicality requirement is not highly demanding" because the claims need not be identical. *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 399 (E.D.N.Y. 2022) (quoting *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 595 (S.D.N.Y. 2021)). As such, typicality "is usually met irrespective of minor variations in the fact patterns underlying individual claims" where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and

22

the class sought to be represented." *Allegra*, 341 F.R.D. at 399. "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493(VB), 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013) (quoting *In re Citigroup Pension Plan Erisa Litig.*, 241 F.R.D. 172, 178 (S.D.N.Y. 2006)).

Here, the Class Representatives' claims are typical of the Settlement Class because all their claims arise out of the same course of conduct: Nurture's marketing, manufacture, and sale of the Products. Further, the Class Representatives assert legal arguments typical of the Settlement Class. *Eastman Kodak*, 228 F.R.D. at 182. Thus, typicality is satisfied.

### 4. Adequacy – Plaintiffs Will Fairly and Adequately Protect the Class

Class representatives are required to "fairly and adequately" represent a class, Fed. R. Civ. P. 23(a)(4), which considers: (1) whether the plaintiff's interests are antagonistic to those of the other class members and (2) whether the plaintiff's attorneys are qualified, experienced, and able to conduct the litigation. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *Lowe*, 2022 WL 4621433, at *5. Here, "[t]he fact that [the class representative's] claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008). Otherwise, the named Plaintiffs and Class Counsel are adequate representatives under Rule 23(a)(4) for the same reasons as they were adequate under Rule 23(e)(2)(A). *See* Section I(B)(1), *supra*.

### B. The Settlement Class Meets the Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521

U.S. 591, 614 (1997). Certification is appropriate under Rule 23(b)(3) if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. Fed. R. Civ. P. 23(b)(3).

### 1. Common Questions of Law or Fact Predominate Over Individual Issues

The predominance requirement inquires as to "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). A class may be certified under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to *some* individual class members." *Id*. (emphasis added). Indeed, predominance is present "if the plaintiffs can show that some of the . . . questions can be answered with respect to the members of the class as a whole through generalized proof and that those common issues are more substantial than individual ones." *Myers v. Hertz Corp*., 624 F.3d 537, 549 (2d Cir. 2010) (quotations and citation omitted); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ("Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof[.]") (quoting *Catholic Healthcare W. v. U.S. Foodservice Inc*. (*In re U.S. Foodservice Inc. Pricing Litig*.), 729 F.3d 108, 118 (2d Cir. 2013)).

Here, the core facts involve Nurture's uniform conduct that allegedly harmed all Settlement Class members in the same manner and the alleged impact of the false advertising on the price that Plaintiffs and the proposed Settlement Class paid for the Products. The answers to the overarching questions of liability regarding Defendant's marketing, manufacture, and sale of the Products predominate because they turn solely on Defendant's conduct. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015). The central common questions include whether Defendant not disclosing the potential presence of Heavy Metals or perchlorate in the Products was likely to deceive

reasonable consumers and whether the omissions were material. These issues are subject to "generalized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227–28 (2d Cir. 2006).

Courts have regularly found that deceptive and misleading marketing cases such as this one satisfy the predominance requirement. *See, e.g.*, *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 273-75 (E.D.N.Y. 2019); *Kurtz v. Kimberly-Clark Corp.*, 414 F. Supp. 3d 317, 333-34 (E.D.N.Y. 2019);[12] *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 69-70 (E.D.N.Y. 2015); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 969 (N.D. Cal. June 28, 2022); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 481 (C.D. Cal. 2012). Predominance for settlement purposes here is satisfied.

### 2. Class Treatment is the Superior Method of Adjudication

"Rule 23(b)(3) allows a class action to be 'maintained' as long as the plaintiff establishes . . . the 'superiority' of a class action compared to other methods" of adjudication. *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2008 WL 597186, at *4 (E.D.N.Y. Mar. 2, 2008) (quoting *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006)). The class action mechanism is superior to individual actions here. First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (quoting *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001)). Second, a class action is superior because the "small recoveries" at stake here likely "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Tart v. Lions Gate Ent. Corp.*, No. 14-CV-8004 (AJN), 2015 WL 5945846, at *5 (S.D.N.Y. Oct. 13, 2015) (quoting *Amchem*, 521 U.S. at 617). Finally, a class

---

[12] *Kurtz* was later reversed in part, but only with respect to Rule 23(b)(2) findings. *See Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 63 (2d Cir. 2020).

action will conserve judicial resources because it will resolve all claims at once. *Id*. For these reasons, a class action is superior to individual suits.

## III.   THE COURT SHOULD APPOINT CO-LEAD COUNSEL AS CLASS COUNSEL

Rule 23(g) separately requires the court to appoint Class Counsel when it certifies a class. At the outset, this Court carefully considered the experience and credentials of the attorneys seeking to lead this litigation and appointed Lori G. Feldman and Rebecca A. Peterson as Interim Co-Lead Counsel. (Dkt. 150.) These attorneys have vigorously litigated this case, including investigation of claims, litigation of dispositive motions, and extensive discovery. (*See* Joint Decl. ¶¶6-23, 55.) They participated in mediation and negotiated the proposed Settlement, obtaining valuable relief for all proposed Settlement Class Members. (*Id*. ¶¶24-33.) Given the extensive work of Interim Co-Lead Counsel, their experience in consumer class action litigation, knowledge of the applicable law, and resources already committed, the Court should appoint them as Class Counsel under Rule 23(g)(1)(A).

## IV.   THE COURT SHOULD AUTHORIZE NOTICE TO THE CLASS

Under Rule 23(e)(1)(B), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Notice of a proposed settlement must inform class members: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. NEWBERG ON CLASS ACTIONS §8:17 (6th ed. June 2026). "Notice is 'adequate if it may be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 114 (quoting 4 NEWBERG §11:53, at 167.  Under Rule 23(c)(2)(B), this Court must "direct to the members of the class the best notice practicable under the circumstances." *Amchem*, 521 U.S. at 617. "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely

26

to inform potential class members." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007); *GSE Bonds*, 414 F. Supp. 3d at 702-03. The Notice Plan set forth in the Settlement meets these requirements and merits this Court's approval. (*See* Settlement §IV; Joint Decl. ¶¶34-38.)

The Parties agreed on a detailed and comprehensive Notice Plan that provides the best notice to Class Members that is practicable under the circumstances. (Joint Decl. ¶¶34-38.) The Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), is a well-respected and reputable third-party administrator and will oversee implementation of the Notice Plan, which contemplates Newspaper Publication Notice, Website Notice, and Internet Media Publication Notice. (Settlement §§IV(A)-(C); Exhibit 2 at ¶¶24-39.) Specifically, the Settlement Administrator will provide for Newspaper Publication Notice in USA Today (*New York edition*), once per week for four (4) consecutive weeks, and will implement an internet media effort of digital media advertising to be distributed over desktop and mobile devices over a period of six weeks, that targets likely Class Members nationwide. (Settlement §§IV(A), (C); Exhibit 2 at ¶¶24-39.) The Settlement Administrator will also establish and maintain the Settlement Website which will include the Long Form Notice, the Claim Form, a copy of the Settlement Agreement, the Preliminary Approval Order (once entered), and any other materials the Parties agree to include, and also provide for online submission of Claim Forms. (Settlement §IV(B); Exhibit 2 at ¶37.)

The Settlement's methods and proposed forms of notice will ensure that Settlement Class Members receive notice in clear and concise terms about the nature of this case, the terms of the Settlement, and their rights. *See* Rule 23(c)(2)(B); (Joint Decl. ¶38). This Court should approve the proposed Notice Plan and approve Epiq as the Settlement Administrator.

## V.    THE COURT SHOULD SCHEDULE THE FINAL APPROVAL HEARING

Pursuant to Rule 23(e)(2), Plaintiffs request that the Court schedule the time, date, and place

of the Final Approval Hearing.

## **CONCLUSION**

Plaintiffs respectfully request that this Court enter the proposed Preliminary Approval Order.


Dated: July 1, 2026                    Respectfully submitted,


**HECHT PARTNERS LLP**


By: */s/ Rebecca Anne Peterson*
Rebecca Anne Peterson (*pro hac vice*)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Tel.: (612) 778-9595
Fax: (888) 421-4173
E-mail: rpeterson@hechtpartners.com


By: */s/ Lori G. Feldman*
Lori G. Feldman
125 Park Avenue, 25th Floor
New York, NY 10017
Tel.: (212) 851-6821
Fax: (888) 421-4173
E-mail: lfeldman@hechtpartners.com


*Plaintiffs' Interim Co-Lead Counsel*


28

## CERTIFICATE OF COMPLIANCE

I, Rebecca A. Peterson, hereby certify that the accompanying Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Conditional Certification of Settlement Class is 27 pages and contains 9,305 words, excluding the caption, table of contents, table of authorities, signature blocks, and required certificates, and is in compliance with the Court Order granting a page extension on June 29, 2026.

Dated: July 1, 2026                                HECHT PARTNERS LLP

                                                   By: */s/ Rebecca Anne Peterson*
                                                        Rebecca A. Peterson